24 CV 366

# IN THE DISTRICT COURT OF THE UNITED STATES FOR THE WESTERN DISTRICT OF NEW YORK

| | |
|---|---|
| TERRANCE MACK,<br>Petitioner,<br><br>-vs-<br><br>JULIE WOLCOTT,<br>Superintendent of Attica Correctional Facility,<br>Respondent. | PETITION FOR WRIT OF HABEAS CORPUS<br><br>Case No: |

**UNITED STATES DISTRICT COURT FILED APR 19 2024 MARY C. LOEWENGUTH, CLERK WESTERN DISTRICT OF NY**

Abbreviations for references to the state court record (Monroe County Court).

| | |
|---|---|
| A1 | Appendix filed for the Direct Appeal (KA 09-01764) |
| A2 | Appendix filed for the CPL 440 Appeal (KA 18-00983) |
| CPL330M | Motion to Set Aside Verdict (06/10/2009) (Vacca) (A2 1218-1237) |
| CPL440M | Motion to Vacate Judgment (01/13/2017) (A2 23-1056) |
| CPL440P | People's Response (03/22/2017) (*see* A2 1057-1122) |
| CPL440R | Reply Affirmation (03/28/2017) (*see* A2 1123-1156) |
| H1 | Hearing transcript (CPL 440) (11/20/2017) (Ciaccio, J.) |
| H2 | Hearing transcript (CPL 440) (11/21/2017) (Ciaccio, J.) |
| H3 | Hearing transcript (CPL 440) (02/18/2022) (Dollinger, J.) |
| H4 | Hearing transcript (CPL 440) (04/22/2022) (Dollinger, J.) |
| MCCD1 | Monroe County Court Decision (05/11/2018) (Ciaccio, J.) (A2 6-19) |
| MCCD2 | Monroe County Court Decision (01/25/2023) (Dollinger, J.) |
| PHDM1 | Post-Hearing Defense Memorandum (01/10/2018) (A2 1160-1184) |
| PHPM1 | Post-Hearing People's Memorandum (01/17/2018) (A2 1185-1193) |
| PHDM2 | Post-Hearing Defense Memorandum (05/27/2022) |
| PHPM2 | Post-Hearing People's Memorandum (06/17/2022) |
| PHDRM2 | Post-Hearing Defense Reply Memorandum (07/01/2022) |
| SH | Suppression hearing transcript (April 9, 2009) (Geraci, J.) |
| T | Trial transcript (May 4-8, 2009) (Geraci, J.) |

Terrance L. Mack, DIN 09B2000
*Pro Se* but requesting the assignment of counsel



PETITION UNDER 28 U.S.C. § 2254 FOR WRIT OF
HABEAS CORPUS BY A PERSON IN STATE CUSTODY

| United States District Court | District Western | |
|---|---|---|
| Name Terrance L. Mack | Prisoner No. 09B2000 | Case No. Ind# 2008-0921B |
| Place of Confinement **Attica Correctional Facility** | | |
| Name of Petitioner (include name under which convicted) Terrance L. Mack | Name of Respondent (authorized person having custody of petitioner) V. Julie Wolcott, Superintendent | |
| The Attorney General of the State of: New York | | |

## PETITION

1.  Name and location of court which entered the judgment of conviction under attack _____
    Monroe County Court (Hon. Frank P. Geraci, Jr.), 545 Hall of Justice, Rochester, New York 14614

2.  Date of judgment of conviction    June 17, 2009

3.  Length of sentence    25 years with 5 years of post-release supervision

4.  Nature of offense involved (all counts)
    Gang Assault in the first degree - Penal Law §§ 120.07 and 20.00 (one count)

5.  What was your plea? (Check one)

    (a) Not guilty    ☑

    (b) Guilty    ☐

    (c) Nolo contendere    ☐

    If you entered a guilty plea to one count or indictment, and a not guilty plea to another count or indictment, give details:

6.  If you pleaded not guilty, what kind of trial did you have? (Check one)

    (a) Jury    ☑

    (b) Judge only    ☐

7.  Did you testify at the trial?
    Yes ☑    No ☐

8.  Did you appeal from the judgment of conviction?
    Yes ☑    No ☐

9.  If your answer to 8. was "yes," attach a copy of the appeals court decision to this petition and answer the following:

    (a) Name of court (e.g., NYS Sup. Court, 4th Dept.)   Appellate Division, Fourth Department

    (b) Result  Judgment reversed and new trial granted

    (c) Date of result and citation, if known   People v Mack (117 AD3d 1450 [4th Dept 05/02/2013])

    (d) List all grounds you raised (1)   See attachment.

        (2) _____

        (3) _____

        (4) _____

10. Did you seek further review of the appeals court decision by a higher state court (e.g., the NYS Court of Appeals)?

    Yes [ ]   No [✓]

11. If your answer to 10. was "yes," attach a copy of the higher state court decision to this petition and answer the following:

    (a) Name of court   New York Court of Appeals.  See attachments for explanation of item 10 (The People appealed)

    (b) Result  Reversed and remitted to Appellate Division (Rivera, J., dissent).  After remittal, the Appellate Division affirmed (Carni and Scudder, JJ. dissent)

    (c) Date of result and citation, if known   27 NY3d 534 [06/07/2016] and 142 AD3d 755 [4th Dept 08/17/2016]

    (d) List all grounds you raised (1)   See attachment for grounds raised on People's appeal.

        (2) _____

        (3) _____

        (4) _____

12. Did you file a petition for certiorari in the United States Supreme Court?

    Yes [ ]   No [✓]

13. If your answer to 12. was "yes," attach a copy of the United States Supreme Court decision to this petition and please answer the following with respect to each direct appeal you asked the United States Supreme Court to review:

- 3 -

(a)  Result  Not applicable

(b)  Date of result and citation, if known

(c)  List **all** grounds you raised (1)

(2)

(3)

(4)

14.  Other than a direct appeal from the judgment of conviction and sentence, have you previously filed any petitions, applications, or motions (e.g. a petition under NY CPL § 440, a state habeas petition, or a previous petition under 28 U.S.C. 2254) with respect to this judgment in any court, state or federal?

Yes  ☑   No  ☐

15.  If your answer to 14. was "yes," **attach a copy of that court's decision to this petition** and give the following information:

(a) Name of court  Monroe County Court (Hon. Christopher S. Ciaccio) - This was the first decision on the motion.

(b) Nature of proceeding  CPL 440 motion to vacate the conviction

(c) Date Filed  January 13, 2017

(d) List **all** grounds you raised (1)  See attachment.
    The Appellate Division would later rule that the County Court erred by limiting the scope of the hearing.

(2)

(3)

(4)

(e) Did you receive an evidentiary hearing on your petition, application, or motion?
    Yes  ☑   No  ☐

(f) Result ___The court found a professional blunder but ruled that Mr. Mack suffered no prejudice.___

(g) Date of result ___May 11, 2018 but see People v Mack (195 AD3d 1601 [4th Dept 06/17/2021]) attached.___

16.  If your answer to 14. was "yes" and you also filed a <u>second</u> petition, application, or motion, <u>attach a copy of that court's decision to this petition</u> and give the same information:

(a) Name of court ___Monroe County Court (Hon. Mchael L. Dollinger)___

(b) Nature of proceeding ___Continuation of the hearing on the original CPL 440 motion___

(c) Date Filed ___N/A - Not a new filing.___

(d) List <u>all</u> grounds you raised (1) ___Same as Item 15 (d) (see attachment)___

(2) _____

(3) _____

(4) _____

(e) Did you receive an evidentiary hearing on your petition, application, or motion?

Yes ☑   No ☐

(f) Result ___The County Court denied the CPL 440 motion under the New York standard for ineffective assistance of counsel  without addressing the Federal Standard.___

(g) Date of result ___January 25, 2023 (served January 30, 2023)___

As to any third, fourth, etc. petition, application, or motion, <u>attach a copy of that court's decision to this petition</u> and give the same information asked for under 15. and 16.

17.  If your answer to 14. was "yes" and if the court did not grant the petition(s), application(s), or motion(s) you listed under 15. and 16., did you appeal to an intermediate court of appeals (e.g., the New York State Court of Appeals or the Second Circuit Court of Appeals)?

Yes ☑   No ☐

18.  If your answer to 17. was "yes," <u>attach a copy of the appeals court decision to this petition</u> and answer the following regarding <u>each</u> petition, application, or motion:

(a) Name of court ___Appellate Division, Fourth Department___

(b) Date Filed ___February 28, 2023___

(c) Result ___Hon. Stephen K. Lindley denied leave to appeal.___

(d) Date of result and citation, if known ___April 25, 2023___

(e) List all grounds you raised (1)    Same as in the attachment for Item 15 (d). .

(2) _____

(3) _____

(4) _____

19. Did you appeal to the highest state court (e.g., the NYS Court of Appeals) or the United States Supreme Court for review of decisions regarding the petition(s), application(s), or motion(s) you listed in 15. and 16.?

(a) First petition      Yes ☐      No ☑

(b) Second petition     Yes ☐      No ☐

(c) Third petition      Yes ☐      No ☐

[List any other petition and indicate yes or no.]

20. For each "yes" answer in 19., attach a copy of that court's decision to this petition and give the following information:

(a) Name of court _____

(b) Date filed _____

(c) Result _____

(d) Date of result and citation, if known _____

(e) List all grounds you raised (1) _____

(2) _____

(3) _____

(4) _____

21. If you did *not* appeal from the adverse action on any petition, application, or motion, explain briefly why you did not:

Because Justice Lindley denied leave to appeal to the Appellate Division, Fourth Department, no further review by the Court of Appeals was available under New York law. With Justice Lindley's denial of leave to appeal, all state remedies for relief were exhausted.

22.  State *concisely* every ground on which you claim that you are being held unlawfully.  Summarize briefly the *facts* supporting each ground.  If necessary, you may attach pages stating additional grounds and *facts* supporting same.

CAUTION: In order to proceed in federal court, you must ordinarily first exhaust your available state court remedies as to each ground on which you request action by the federal court.  *See* 28 U.S.C. §2254(b).  If you fail to set forth all grounds in this petition, you may be barred from presenting additional grounds at a later date.  *See* 28 U.S.C. §2244(b).

For your information, the following is a list of the most frequently raised grounds for relief in habeas corpus proceedings.  Each statement preceded by a letter constitutes a separate ground for possible relief.  You may raise any grounds which you may have other than those listed if you have exhausted your state court remedies with respect to them. However, *you should raise in this petition all available grounds* (relating to this conviction) on which you base your allegations that you are being held in custody unlawfully.

Do not check any of these listed grounds.  If you select one or more of these grounds for relief, you must allege facts.  The petition will be returned to you if you merely check (a) through (j) or any one of these grounds.

(a)  Conviction obtained by plea of guilty which was unlawfully induced or not made voluntarily with understanding of the nature of the charge and the consequences of the plea.
(b)  Conviction obtained by use of coerced confession.
(c)  Conviction obtained by use of evidence gained pursuant to an unconstitutional search and seizure.
(d)  Conviction obtained by use of evidence obtained pursuant to an unlawful arrest.
(e)  Conviction obtained by a violation of the privilege against self-incrimination.
(f)  Conviction obtained by the unconstitutional failure of the prosecution to disclose to the defendant evidence favorable to the defendant.
(g)  Conviction obtained by a violation of the protection against double jeopardy.
(h)  Conviction obtained by action of a grand or petit jury which was unconstitutionally selected and impaneled.
(i)  Denial of effective assistance of counsel.
(j)  Denial of right of appeal.

A.  Ground one:  See attachment for all grounds.

Supporting FACTS (state briefly without citing cases or law):

- 7 -

B.    Ground two: _____

_____

Supporting FACTS (state briefly without citing cases or law):    _____

_____

_____

_____

_____

_____

_____

C.    Ground three: _____

_____

Supporting FACTS (state briefly without citing cases or law):    _____

_____

_____

_____

_____

_____

_____

D.    Ground four: _____

_____

Supporting FACTS (state briefly without citing cases or law):    _____

_____

_____

_____

_____

_____

23.    If you did not previously present any of the grounds listed in 22A, 22B, 22C, and 22D in any other court, state or federal, state briefly what grounds you did not present and give your reasons for not presenting them:

~~Not Applicable.~~ _____

_____

_____

_____

24. Do you have any petition or appeal now pending in any court, either state or federal, as to the judgment under attack?

Yes ☐    No ☑

(a) Name of court _____

(b) Nature of proceeding _____

(c) Date filed _____

(d) List all grounds you raised (1) _____

_____

(2) _____

_____

(3) _____

_____

(4) _____

_____

25. Give the name and address, if known, of each attorney who represented you in the following stages of the judgment you challenge in this petition:

(a) At preliminary hearing   Not applicable

_____

(b) At arraignment and plea   Arraignment: Paul J. Vacca, Jr., 45 Exchange Blvd, Rochester, New York 14614

_____

(c) At trial   Paul J. Vacca, Jr.

_____

(d) At sentencing   Paul J. Vacca, Jr.

_____

(e) On appeal   David R. Juergens, 10 North Fitzhugh Street, Rochester, New York, 14614

_____

(f) In any post-conviction proceeding   David R. Juergens

_____

(g) On appeal from any adverse ruling in a post-conviction proceeding   David R. Juergens
On 02/28/2023, Mr. Juergens filed a motion for leave to appeal the County Court's denial of the CPL 440 motion.

26. Were you sentenced on more than one count of an indictment, or on more than one indictment, in the same court and at the same time?

Yes ☐    No ☑

- 9 -

27.   Do you have any future sentence to serve after you complete the sentence imposed by the judgment under attack?

Yes [ ]     No [✓]

(a) If so, give name and location of court which imposed sentence to be served in the future: _____

_____

(b) Give date and length of the above sentence: _____

_____

(c) Have you filed, or do you contemplate filing, any petition attacking the judgment which imposed the sentence to be served in the future?

Yes [ ]     No [ ]


Wherefore, petitioner prays that the Court grant petitioner relief to which he may be entitled in this proceeding.


_____
Signature of Attorney (if any)


I declare under penalty of perjury that the foregoing is true and correct.  Executed on


_2/27/24_____
(Date)


Terrance Mack
Signature of Petitioner


- 1 O -

Terrance L. Mack, Petitioner, v Julie Wolcott, Superintendent.
Petition Under 28 U.S.C. § 2254 for a Writ of Habeas Corpus
Attachments

Item 9: *People v Mack* (117 AD3d 1450 [May 2, 2014]) – Opinion attached.

Item 9 (d) - List all grounds you raised:

(1)    The trial court's complete failure to respond to three substantive, unrevoked jury requests for further instruction on the law and information on the evidence was reversible error.

US Const, Amend V, VI: Right to adequate jury trial and due process

(2)    The trial court's misleading response to the jury's deadlock note, followed by the trial court's unnecessary, unreasonable, two-hour period of post-deadlock silence, violated the trial court's duty to promptly respond to substantive jury requests and may have coerced the jury to reach a verdict.

US Const, Amend V, VI: Right to a fair trial and due process

(3)    Because Mr. Mack's trial defense was misidentification and alibi, defense counsel's failure to object to inadmissible identification evidence, including: (1) Testimony from Megan Torres about selecting Mr. Mack from a photo array; (2) Receipt of the photo array into evidence; (3) Hand-written notes on the photo array; (4) Police testimony bolstering the photo array selection; (5) Police testimony bolstering the photo array procedure; and (6) Bolstering testimony about non-selections from other photo arrays, when considered cumulatively with other independent errors, deprived Mr. Mack of his Constitutional Right to the effective assistance of counsel.

US Const, Amend VI: Right to the effective assistance of counsel

(4)    The trial court committed reversible error by receiving into evidence a recorded, mid-trial telephone conversation between Mr. Mack and his father.

**People v. Mack, 117 A.D.3d 1450 (2014)**

984 N.Y.S.2d 768, 2014 N.Y. Slip Op. 03075

⚑KeyCite Red Flag - Severe Negative Treatment
Order Reversed by People v. Mack, N.Y., June 7, 2016

117 A.D.3d 1450
Supreme Court, Appellate Division, Fourth Department, New York.

The PEOPLE of the State of New York, Respondent,
v.
**Terrance L. MACK**, Defendant–Appellant.

May 2, 2014.

**Synopsis**
**Background:** Defendant was convicted in the Monroe County Court, Frank P. Geraci, Jr., J., of gang assault in the first degree. Defendant appealed.
 **[Holding:]** The Supreme Court, Appellate Division, held that county court's failure to respond to jury's notes requesting readbacks of instructions warranted reversal of conviction.

Reversed.

Lindley, J., dissented and filed opinion.

**Attorneys and Law Firms**

**\*\*769** Timothy P. Donaher, Public Defender, Rochester (David R. Juergens of Counsel), for Defendant–Appellant.

Sandra Doorley, District Attorney, Rochester (Geoffrey A. Kaeuper of Counsel), for Respondent.
PRESENT: SCUDDER, P.J., PERADOTTO, CARNI, and LINDLEY, JJ.

**Opinion**

MEMORANDUM:

**\*1450** Defendant appeals from a judgment convicting him upon a jury verdict of gang assault in the first degree (⚐Penal Law § 120.07). The gang assault resulted in the death of the victim from two stab wounds. Although a police

witness testified that between 75 and 100 people may have seen the incident, only one eyewitness identified defendant as a participant, and that eyewitness testified that defendant hit the victim with a bottle and held the victim while others beat her. Defendant contends, inter alia, that it was reversible error for County Court to accept the verdict without first responding to three notes from the jury. We agree, and we therefore reverse the judgment and grant a new trial.

The record establishes that the court advised the attorneys at 6:02 p.m. that they could "remain unavailable" until 7:30 p.m., at which time any "questions or concerns" raised by the jury would be addressed. During that recess, the jury sent three notes into the court. The first note stated that "we would like to have the instructions regarding the importance of a single witness in a case versus multiple witnesses and the instructions about the meaning of reasonable doubt read back to us." The second note contained a request "to hear [the eyewitness's] testimony regarding [defendant's] leaving of the crime scene" and a request for "more jury request sheets." The third note contained a request for a "smoke break." Upon reconvening at 7:51 p.m., the court read the notes into the record in the presence of counsel. The court indicated that it would read the requested instructions to the jury and, while determining whether there was testimony from the eyewitness about defendant leaving the scene, the court received a further note at 7:54 **\*1451** p.m. stating that the jury had come to a verdict. The court recessed until 8:10 p.m., at which time it accepted the verdict without any further mention of the jury notes.

[1] [2] [3] As a preliminary matter, we conclude that "the core requirements of ⊟CPL 310.30 [were] triggered" inasmuch as the jury requested a readback of a portion of the testimony of the sole witness who had identified defendant (*People v. Kahley,* 105 A.D.3d 1322, 1325, 963 N.Y.S.2d 487), as well as a readback of certain legal instructions (*see* ⊟*People v. O'Rama,* 78 N.Y.2d 270, 277–278, 574 N.Y.S.2d 159, 579 N.E.2d 189). We agree with defendant that, although defense counsel failed to object to the court's procedure of accepting the verdict without responding to the jury's notes, the failure of the court to provide a meaningful response to the substantive requests of the jury is a mode of proceedings error for which preservation is not required (*see* ⊟*People v. Kisoon,* 8 N.Y.3d 129, 135, 831 N.Y.S.2d 738, 863 N.E.2d 990; ⊟*O'Rama,* 78 N.Y.2d at 279, 574 N.Y.S.2d 159, 579 N.E.2d 189; *cf.* **\*\*770** *People v. Geroyianis,* 96 A.D.3d 1641, 1643, 946 N.Y.S.2d 803, *lv. denied* 19 N.Y.3d 996,

951 N.Y.S.2d 472, 975 N.E.2d 918, *reconsideration denied* 19 N.Y.3d 1102, 955 N.Y.S.2d 557, 979 N.E.2d 818). Indeed, "there are few moments in a criminal trial more critical to its outcome than when the court responds to a deliberating jury's request for clarification of the law or further guidance on the process of deliberations" (⌐*Kisoon*, 8 N.Y.3d at 134–135, 831 N.Y.S.2d 738, 863 N.E.2d 990 [internal quotation marks omitted] ). The jury may have resolved the factual issue regarding whether the eyewitness testified that she saw defendant leave the scene without further instruction assistance from the court (*see People v. Sanders*, 227 A.D.2d 506, 506, 643 N.Y.S.2d 365, *lv. denied* 88 N.Y.2d 994, 649 N.Y.S.2d 401, 672 N.E.2d 627). However, the request for a readback of the instruction on reasonable doubt, the determination of which is the crux of a jury's function, and for a readback of the instruction regarding "the importance a single witness in a case versus multiple witnesses," "demonstrates the confusion and doubt that existed in the minds of the jury with respect to ... crucial issue[s] ... The jury is entitled to the guidance of the court and may not be relegated to its own unfettered course of procedure" (*People v. Hall,* 101 A.D.2d 956, 957, 477 N.Y.S.2d 439). We therefore conclude that the court's failure to respond to the jury's notes seeking clarification of those instructions before the verdict was accepted "seriously prejudiced" defendant (⌐*People v. Lourido,* 70 N.Y.2d 428, 435, 522 N.Y.S.2d 98, 516 N.E.2d 1212; *see People v. Clark,* 108 A.D.3d 797, 800, 968 N.Y.S.2d 249; *People v. Smith,* 68 A.D.3d 1021, 1022, 892 N.Y.S.2d 135; *cf.* ⌐*People v. Agosto,* 73 N.Y.2d 963, 966, 540 N.Y.S.2d 988, 538 N.E.2d 340; *People v. Lynch,* 60 A.D.3d 1479, 1481, 875 N.Y.S.2d 730, *lv. denied* 12 N.Y.3d 926, 884 N.Y.S.2d 708, 912 N.E.2d 1089).

We have reviewed defendant's remaining contentions and conclude that they are without merit.

All concur except LINDLEY, J., who dissents and votes to affirm in the following Memorandum:
**\*1452** I respectfully dissent. In my view, the jury, by issuing a note stating that it had reached a verdict, impliedly rescinded its outstanding notes requesting a readback of certain instructions and certain testimony, and County Court therefore did not err in concluding that "the jury had resolved its questions and was no longer in need of the requested information" (*People v. Sorrell,* 108 A.D.3d 787, 793, 969 N.Y.S.2d 198; *see People v. Cornado,* 60

A.D.3d 450, 451, 874 N.Y.S.2d 463, *lv. denied* 12 N.Y.3d 913, 884 N.Y.S.2d 694, 912 N.E.2d 1075; *People v. Quintana,* 262 A.D.2d 101, 101, 689 N.Y.S.2d 636, *lv. denied* 94 N.Y.2d 865, 704 N.Y.S.2d 541, 725 N.E.2d 1103). In any event, even assuming, arguendo, that the court erred in failing to respond to the outstanding jury notes, I note that defendant did not object to the court's taking of the verdict, and his contention that the court erred in accepting the verdict without responding to the jury notes is thus unpreserved for our review (*see generally* CPL 470.05[2] ).

Unlike the majority, I do not perceive the court's failure to respond to the outstanding notes to be a mode of proceedings error that does not require preservation (*see People v. Geroyianis,* 96 A.D.3d 1641, 1643, 946 N.Y.S.2d 803, *lv. denied* 19 N.Y.3d 996, 951 N.Y.S.2d 472, 975 N.E.2d 918, *reconsideration denied* 19 N.Y.3d 1102, 955 N.Y.S.2d 557, 979 N.E.2d 818; *Cornado,* 60 A.D.3d at 451, 874 N.Y.S.2d 463). Although providing a meaningful response to notes from the jury is clearly among the court's "core responsibilities" under CPL 310.30 ( **771** *People v. Tabb,* 13 N.Y.3d 852, 853, 891 N.Y.S.2d 686, 920 N.E.2d 90; *see People v. O'Rama,* 78 N.Y.2d 270, 277, 574 N.Y.S.2d 159, 579 N.E.2d 189), the statute does not expressly require the court to respond to a note that is followed by an announcement from the jury that it has reached a verdict. Nor is there any case law specifically directing trial courts to respond to outstanding notes under such circumstances. Unlike in *O'Rama* and its progeny, the court here properly read the notes into the record and solicited input from defense counsel with respect to an appropriate response. While the court and counsel were discussing how to respond to the notes, the jury announced that it had reached a verdict. Despite having full knowledge of all the relevant facts, defense counsel elected not to object to the court's taking of the verdict and, indeed, may well have consented to it during an off-the-record sidebar discussion.

As the Court of Appeals has emphasized, "[n]ot every procedural misstep in a criminal case is a mode of proceedings error," a term that is "reserved for the most fundamental flaws" ( *People v. Becoats,* 17 N.Y.3d 643, 651, 934 N.Y.S.2d 737, 958 N.E.2d 865; *see People v. Alcide,* 21 N.Y.3d 687, 695, 976 N.Y.S.2d 432, 998 N.E.2d 1056). In my view, the court's failure to respond to the outstanding jury notes, even if error, was not so significant or prejudicial as to constitute a fundamental flaw in the criminal process. I would therefore affirm the judgment of **\*1453** conviction.

It is hereby ORDERED that the judgment so appealed from is reversed on the law and a new trial is granted.

## All Citations

117 A.D.3d 1450, 984 N.Y.S.2d 768, 2014 N.Y. Slip Op. 03075

---

End of Document

© 2024 Thomson Reuters. No claim to original U.S. Government Works.

Terrance L. Mack, Petitioner, v Julie Wolcott, Superintendent.
Petition Under 28 U.S.C. § 2254 for a Writ of Habeas Corpus
Attachments

Item 10:    Mr. Mack did *not* seek further review.  However, the State did.
The lone dissenting Appellate Division Justice (Hon. Stephen
K. Lindley) granted the People's request for leave to appeal to
the New York Court of Appeals.

*People v Mack* (23 NY3d 1027 [June 30, 2014]) – Opinion attached

People v Mack, 23 N.Y.3d 1027 (2014)

16 N.E.3d 1289, 992 N.Y.S.2d 809 (Table)

New York
Official Reports

23 N.Y.3d 1027, 16 N.E.3d 1289, 992 N.Y.S.2d 809 (Table)

People v Mack

Court of Appeals of New York
6/30/14

CITE TITLE AS: People v Mack

4th Dept: 117 AD3d 1450 (Monroe)

APPLICATIONS IN CRIMINAL CASES FOR LEAVE TO APPEAL

Decisions of Appellate Division Justices

granted 6/30/14 (Lindley, J.)

## FOOTNOTES

Copr. (C) 2023, Secretary of State, State of New York

### Footnotes

*    Includes only applications that were granted.

**End of Document**

© 2024 Thomson Reuters. No claim to original U.S. Government Works.

## SUPREME COURT OF THE STATE OF NEW YORK
### Appellate Division, Fourth Judicial Department

KA 09-01764

THE PEOPLE OF THE STATE OF NEW YORK, RESPONDENT,

V

TERRANCE L. MACK, DEFENDANT-APPELLANT.

Indictment No: 2008-0921B

I, Stephen K. Lindley, Associate Justice of the Appellate Division, Fourth Judicial Department, do hereby certify that, upon the motion of respondent pursuant to CPL 460.20 for permission to appeal to the Court of Appeals from the order of this Court entered May 2, 2014, reversing a judgment of the Monroe County Court rendered June 17, 2009, there is a question of law presented which ought to be reviewed by the Court of Appeals, and permission to appeal is hereby granted.*

Dated: June 30, 2014

_____
Hon. Stephen K. Lindley
Associate Justice

*See CPL 460.70 (3) for methods for perfecting the appeal.

23 N.Y.3d 1055
Court of Appeals of New York.

The PEOPLE etc., Appellant,
v.
**Terrance L. MACK**, Respondent.

Aug. 28, 2014.

## Opinion

Reported below, 117 A.D.3d 1450, 984 N.Y.S.2d 768.

Motion for assignment of counsel granted and Timothy P. Donaher, Esq., Monroe County Public Defender, 10 N. Fitzhugh Street, Rochester, N.Y. 14614 assigned as counsel to the respondent on the appeal herein.

## All Citations

23 N.Y.3d 1055, 16 N.E.3d 1270, 992 N.Y.S.2d 791 (Mem), 2014 N.Y. Slip Op. 81877

---

**End of Document**

© 2024 Thomson Reuters. No claim to original U.S. Government Works.

Terrance L. Mack, Petitioner, v Julie Wolcott, Superintendent.
Petition Under 28 U.S.C. § 2254 for a Writ of Habeas Corpus
Attachments

Item 11:  This section covers the proceedings before the Court of Appeals

*People v Mack* Opinions attached:

> 23 NY3d 1055 (08/28/2014) – Motion for assignment of counsel granted
> 26 NY3d 998 (10/27/2015) – Reargument ordered
> 26 NY3d 1138 (02/23/2016) – Motion to file supplemental brief granted
> 27 NY3d 534 (06/07/2016) – Reversed and remitted (Rivera, J. dissent)
> 28 NY3d 944 (09/08/2016) – Motion for reargument denied

Item 11(d):        List all grounds you raised (before the Court of Appeals
                   on the People's appeal)

(1)    This Court should affirm the Appellate Division's decision as the
       trial court's failure to meet its core responsibility under NY CPL
       310.30 Constituted a mode of proceedings error.

(2)    This Court should affirm the Appellate Division's decision as Mr.
       Mack was provided ineffective assistance of counsel at trial.

US Const, Amend VI: Right to the effective assistance of counsel

Supplemental brief:

(1)    Applying rules of preservation to the failure to respond to jury
       questions would be contrary to CPL 310.30 and would overrule
       *O'Rama.*

(2)    Concerns that defense counsel will "game" the system do not
       justify applying rules of preservation to the trial judge's failure
       to respond to jury questions.

(3)    The trial judge's failure to respond to jury questions was
       prejudicial to respondent.

People v. Mack, 23 N.Y.3d 1055 (2014)
16 N.E.3d 1270, 992 N.Y.S.2d 791, 2014 N.Y. Slip Op. 81877

23 N.Y.3d 1055
Court of Appeals of New York.

The PEOPLE etc., Appellant,
v.
**Terrance L. MACK**, Respondent.

Aug. 28, 2014.

## Opinion
Reported below, 117 A.D.3d 1450, 984 N.Y.S.2d 768.

Motion for assignment of counsel granted and Timothy P. Donaher, Esq., Monroe County Public Defender, 10 N. Fitzhugh Street, Rochester, N.Y. 14614 assigned as counsel to the respondent on the appeal herein.

## All Citations

23 N.Y.3d 1055, 16 N.E.3d 1270, 992 N.Y.S.2d 791 (Mem), 2014 N.Y. Slip Op. 81877

---

**End of Document**

© 2024 Thomson Reuters. No claim to original U.S. Government Works.

People v. Mack, 26 N.Y.3d 998 (2015)

41 N.E.3d 77, 19 N.Y.S.3d 218, 2015 N.Y. Slip Op. 88678

26 N.Y.3d 998
Court of Appeals of New York.

The PEOPLE etc., Appellant,
v.
**Terrance L. MACK**, Respondent.

Oct. 27, 2015.

## Opinion

Reported below, 117 A.D.3d 1450, 984 N.Y.S.2d 768.

**\*219** Reargument ordered and case set down for argument during a future session of this Court.

Chief Judge LIPPMAN and Judges PIGOTT, RIVERA, ABDUS–SALAAM, STEIN and FAHEY concur.

## All Citations

26 N.Y.3d 998, 41 N.E.3d 77, 19 N.Y.S.3d 218 (Mem), 2015 N.Y. Slip Op. 88678

---

**End of Document**

© 2024 Thomson Reuters. No claim to original U.S. Government Works.

47 N.E.3d 781, 27 N.Y.S.3d 500, 2016 N.Y. Slip Op. 64913

26 N.Y.3d 1138
Court of Appeals of New York.

The PEOPLE etc., Appellant,
v.
**Terrance L. MACK**, Respondent.

Feb. 23, 2016.

## Opinion

Reported below, 117 A.D.3d 1450, 984 N.Y.S.2d 768.

**\*501** Motion to file a supplemental brief granted and the proposed brief is accepted as filed. Three copies of the brief must be served and an original and nine copies filed within seven days.

## All Citations

26 N.Y.3d 1138, 47 N.E.3d 781, 27 N.Y.S.3d 500 (Mem), 2016 N.Y. Slip Op. 64913

---

End of Document

© 2024 Thomson Reuters. No claim to original U.S. Government Works.

---

People v. Mack, 27 N.Y.3d 534 (2016)

55 N.E.3d 1041, 36 N.Y.S.3d 68, 2016 N.Y. Slip Op. 04321

KeyCite Yellow Flag - Negative Treatment
Distinguished by People v. Robinson, N.Y.A.D. 1 Dept., September 29, 2016

**27 N.Y.3d 534**
Court of Appeals of New York.

The PEOPLE of the State of New York, Appellant,
v.
**Terrance L. MACK**, Respondent.

June 7, 2016.

**Synopsis**
**Background:** Defendant was convicted by jury in the Monroe County Court, Frank P. Geraci, Jr., J., of gang assault in first degree. Defendant appealed. The Supreme Court, Appellate Division, 117 A.D.3d 1450, 984 N.Y.S.2d 768, reversed conviction and ordered new trial due to county court's failure to respond to jury's notes before accepting verdict. People appealed.

**Holdings:** The Court of Appeals, Fahey, J., held that:

[1] in matter of first impression, where counsel has meaningful notice of content of jury note and of trial court's response or lack thereof, court's failure to meaningfully respond to jury is not mode of proceedings error so preservation is required, and

[2] county court's failure to respond to jury's notes was not mode of proceedings error.

Reversed and remitted.

Rivera, J., filed dissenting opinion.

**Attorneys and Law Firms**

***70** Sandra Doorley, District Attorney, Rochester (Geoffrey Kaeuper of counsel), for appellant.

People v. Mack, 27 N.Y.3d 534 (2016)

55 N.E.3d 1041, 36 N.Y.S.3d 68, 2016 N.Y. Slip Op. 04321

Sullivan & Cromwell LLP, New York City (Nicolas Bourtin and Amanda L. Houle of counsel), and Timothy P. Donaher, Public Defender, Rochester (David R. Juergens of counsel), for respondent.

## OPINION OF THE COURT

FAHEY, J.

**\*\*1043 \*536** Criminal Procedure Law § 310.30 imposes two responsibilities on trial courts upon receipt of a substantive note from a deliberating jury: the court must provide counsel with meaningful notice of the content of the note, and the court must provide a meaningful response to the jury (*People v. O'Rama,* 78 N.Y.2d 270, 276–277, 574 N.Y.S.2d 159, 579 N.E.2d 189 [1991] ). A trial court's failure to fulfill its first responsibility—meaningful notice to counsel—falls within the narrow class of mode of proceedings errors for which preservation is not required (*see id.* at 279, 574 N.Y.S.2d 159, 579 N.E.2d 189). On this appeal, we consider **\*537** whether the preservation rule applies when counsel unquestionably had meaningful notice of the jury's substantive inquiries, but the trial court did not respond to those inquiriesbefore **\*\*1044 \*\*\*71** accepting the verdict. We hold that where counsel has meaningful notice of the content of a jury note and of the trial court's response, or lack thereof, to that note, the court's alleged violation of the meaningful response requirement does not constitute a mode of proceedings error, and counsel is required to preserve any claim of error for appellate review.

## I.

Defendant was charged with gang assault in the first degree for his involvement in a group attack on a woman that resulted in her death. Shortly before 6:00 p.m. on the first day of deliberations, the jury stated that it was deadlocked. After the court responded to that note, the jury returned to its deliberations at 6:02 p.m. The court then informed counsel that it would stand in recess until 7:30 p.m. There is no indication on the record that the jury was informed of this recess.

During the recess, the jury sent out three notes. The first note, sent at 6:20 p.m., requested the court's instructions regarding "the importance of a single

**People v. Mack, 27 N.Y.3d 534 (2016)**
55 N.E.3d 1041, 36 N.Y.S.3d 68, 2016 N.Y. Slip Op. 04321

witness in a case versus multiple witnesses and the instructions about the meaning of reasonable doubt." The second note, sent at 6:43 p.m., requested to hear the testimony of one of the People's witnesses, who had identified defendant as one of the assailants, regarding the defendant's "leaving of the crime scene," and also asked for more jury request sheets. The third note, sent at 6:47 p.m., asked for a smoking break.[1]

When the proceedings reconvened at 7:51 p.m., the court marked these three notes as court exhibits and then read the notes verbatim into the record in the presence of counsel and defendant. The court stated that it planned to reread its earlier legal instructions on the requested topics, and the court and counsel concluded that the People's witness had not provided any testimony about defendant's departure from the crime scene. Before the court recalled the jury into the courtroom to provide those responses, however, the court deputy handed the court another note from the jury.

That note, sent at 7:54 p.m. and marked as a court exhibit, stated that the jury had reached a verdict. The court and **\*538** counsel had an off-the-record bench discussion. At 8:10 p.m., the court announced on the record in the presence of counsel and defendant that the jury had reached a verdict and that the court planned to bring the jurors into the courtroom to take their verdict. The jurors then entered the courtroom and reported that they had found defendant guilty. The court polled the jury and accepted the verdict without responding to the notes sent during the recess or inquiring whether the jurors still desired a response to those notes. Counsel did not object to this procedure.

On appeal, the Appellate Division reversed the judgment and ordered a new trial (117 A.D.3d 1450, 984 N.Y.S.2d 768 [4th Dept.2014] ). The Appellate Division held that the trial court's failure to provide a meaningful response to the jury's substantive requests before accepting the verdict constituted a mode of proceedings error for which preservation was not required (see *id.* at 1451, 984 N.Y.S.2d 768). The dissenting Justice would have affirmed, concluding that any error did not constitute a mode of proceedings error and, in any event, that there was no error because the jury implicitly rescinded its earlier requests (see *id.* at 1452, 984 N.Y.S.2d 768 [Lindley, J., dissenting] ).

***72 **1045 The dissenting Justice granted the People leave to appeal to this Court (23 N.Y.3d 1027, 992 N.Y.S.2d 809, 16 N.E.3d 1289 [2014] ). We now reverse.

## II.

[1] [2] In *People v. O'Rama,* this Court held that ⊟CPL 310.30 requires trial courts to provide meaningful notice to counsel of a substantive inquiry from a deliberating jury, and that meaningful notice "means notice of the actual specific content of the jurors' request" (⊟*O'Rama,* 78 N.Y.2d at 277, 574 N.Y.S.2d 159, 579 N.E.2d 189). We have subsequently held that when the trial court fails to provide counsel with meaningful notice of a substantive jury note, a mode of proceedings error has occurred and reversal is required, regardless of whether the court has fulfilled its other responsibility under ⊟CPL 310.30 to provide the jury with a meaningful response to its request (*see* ⊟*People v. Walston,* 23 N.Y.3d 986, 989–990, 991 N.Y.S.2d 24, 14 N.E.3d 377 [2014]; ⊟*People v. Tabb,* 13 N.Y.3d 852, 853, 891 N.Y.S.2d 686, 920 N.E.2d 90 [2009]; ⊟*People v. Kisoon,* 8 N.Y.3d 129, 134–135, 831 N.Y.S.2d 738, 863 N.E.2d 990 [2007] ). Recently, in ⊟*People v. Silva,* 24 N.Y.3d 294, 998 N.Y.S.2d 154, 22 N.E.3d 1022 (2014), *rearg. denied* 24 N.Y.3d 1216, 4 N.Y.S.3d 598, 28 N.E.3d 33 (2015), where the trial court fulfilled neither of its core responsibilities under ⊟CPL 310.30, by failing to inform counsel of the existence of a jury note and also failing to respond to the note before accepting the jury's verdict, we held that a mode of proceedings error had occurred (*see* ⊟*id.* at 299–300, 998 N.Y.S.2d 154, 22 N.E.3d 1022).

[3] *539 In ⊟*People v. Nealon,* 26 N.Y.3d 152, 20 N.Y.S.3d 315, 41 N.E.3d 1130 (2015), we reiterated that a court complies with its responsibility to provide counsel with meaningful notice of a substantive jury inquiry by reading the precise content of the note into the record in the presence of counsel, defendant, and the jury before providing a response, even if the court departs from the *O'Rama* procedure (*see generally* ⊟ *O'Rama,* 78 N.Y.2d at 277–278, 574 N.Y.S.2d 159, 579 N.E.2d 189) by failing to discuss the note or the court's intended response with counsel before recalling the jury into the courtroom (*see* ⊟*Nealon,* 26 N.Y.3d at 160–162, 20 N.Y.S.3d 315, 41 N.E.3d 1130). That holding was based upon our precedent requiring preservation when the trial

court departs from the *O'Rama* procedure but counsel nevertheless has meaningful notice of the jury note (*see* ⌐*People v. Alcide,* 21 N.Y.3d 687, 693–694, 976 N.Y.S.2d 432, 998 N.E.2d 1056 [2013]; *People v. Williams,* 21 N.Y.3d 932, 934–935, 969 N.Y.S.2d 421, 991 N.E.2d 195 [2013]; ⌐*People v. Ramirez,* 15 N.Y.3d 824, 825–826, 909 N.Y.S.2d 1, 935 N.E.2d 791 [2010]; ⌐*People v. Starling,* 85 N.Y.2d 509, 516, 626 N.Y.S.2d 729, 650 N.E.2d 387 [1995] ). We repeated our frequent observation that not every departure from the *O'Rama* procedure or violation of ⌐CPL 310.30 constitutes a mode of proceedings error (⌐*Nealon,* 26 N.Y.3d at 158, 20 N.Y.S.3d 315, 41 N.E.3d 1130; *see* ⌐*Silva,* 24 N.Y.3d at 299, 998 N.Y.S.2d 154, 22 N.E.3d 1022; ⌐*Walston,* 23 N.Y.3d at 989, 991 N.Y.S.2d 24, 14 N.E.3d 377; ⌐*Kisoon,* 8 N.Y.3d at 135, 831 N.Y.S.2d 738, 863 N.E.2d 990).

[4] In *Nealon, Silva,* and other post-*O'Rama* decisions considering whether failure to comply with ⌐CPL 310.30 constitutes a mode of proceedings error, the Court did not discuss whether a trial court's alleged failure to provide a meaningful response to a substantive inquiry from the jury, standing alone, constitutes a mode of proceedings error for which preservation is not required. Our jurisprudence makes clear that a trial court's failure **1046 ***73 to provide meaningful notice to counsel of a substantive jury note constitutes a mode of proceedings error (*see* ⌐*Nealon,* 26 N.Y.3d at 156–157, 20 N.Y.S.3d 315, 41 N.E.3d 1130; ⌐*Walston,* 23 N.Y.3d at 989–990, 991 N.Y.S.2d 24, 14 N.E.3d 377; ⌐*Tabb,* 13 N.Y.3d at 853, 891 N.Y.S.2d 686, 920 N.E.2d 90; ⌐ *Kisoon,* 8 N.Y.3d at 134–135, 831 N.Y.S.2d 738, 863 N.E.2d 990). *Silva* also makes clear that a trial court's failure to comply with both of its core responsibilities—both meaningful notice to counsel and a meaningful response to the jury—requires reversal despite lack of preservation (⌐*Silva,* 24 N.Y.3d at 299–300, 998 N.Y.S.2d 154, 22 N.E.3d 1022). We did not consider in these cases, however, whether a mode of proceedings error occurs when the trial court fails to provide a meaningful response to a substantive jury note but satisfies its meaningful notice obligations.[2]

*540 The issue is now squarely before us here. The question is not whether the trial court erred. Rather, the issue is whether the alleged error constitutes a mode of proceedings error requiring automatic reversal despite the lack of preservation.

People v. Mack, 27 N.Y.3d 534 (2016)
55 N.E.3d 1041, 36 N.Y.S.3d 68, 2016 N.Y. Slip Op. 04321

## III.

[5] The errors that fit within the category of mode of proceedings errors are not easily defined. We have described such errors as encompassing a "very narrow exception" to the preservation rule (*Silva,* 24 N.Y.3d at 299, 998 N.Y.S.2d 154, 22 N.E.3d 1022 [internal quotation marks omitted]; *see People v. Kelly,* 5 N.Y.3d 116, 119–120, 799 N.Y.S.2d 763, 832 N.E.2d 1179 [2005] ). Mode of proceedings errors are immune not only from the rules governing preservation and waiver but also from harmless error analysis (*see e.g. People v. Mehmedi,* 69 N.Y.2d 759, 760, 513 N.Y.S.2d 100, 505 N.E.2d 610 [1987], *rearg. denied* 69 N.Y.2d 985, 516 N.Y.S.2d 1028, 509 N.E.2d 363 [1987]; *People v. Ahmed,* 66 N.Y.2d 307, 310, 496 N.Y.S.2d 984, 487 N.E.2d 894 [1985], *rearg. denied* 67 N.Y.2d 647, 499 N.Y.S.2d 1031, 490 N.E.2d 558 [1986]; *People v. Patterson,* 39 N.Y.2d 288, 295, 383 N.Y.S.2d 573, 347 N.E.2d 898 [1976], *affd.* 432 U.S. 197, 97 S.Ct. 2319, 53 L.Ed.2d 281 [1977] ). Such errors require reversal without regard to the prejudice, or lack thereof, to the defendant.

[6] We have therefore been hesitant to expand the mode-of-proceedings-error doctrine. Outside of this "tightly circumscribed class," we have "repeatedly held that a court's failure to adhere to a statutorily or constitutionally grounded procedural protection does not relieve the defendant **1047 ***74 of the obligation to protest" (*Kelly,* 5 N.Y.3d at 120, 799 N.Y.S.2d 763, 832 N.E.2d 1179). Broadening the exception might "open the door to abuse" (*People v. Becoats,* 17 N.Y.3d 643, 651, 934 N.Y.S.2d 737, 958 N.E.2d 865 [2011], *cert. denied* 566 U.S. ——, 132 S.Ct. 1970, 182 L.Ed.2d 822 [2012] ). We have also been wary of the possible erosion of the preservation rule, which allows trial courts to correct errors in a timely fashion (*see e.g. People v. Ippolito,* 20 N.Y.3d 615, 625, 964 N.Y.S.2d 499, 987 N.E.2d 276 [2013] ) and "prevent[s] unnecessary surprise after the conduct of a complete trial" (*People v. Allen,* 24 N.Y.3d 441, 449, 999 N.Y.S.2d 350, 24 N.E.3d 586 [2014] ). The designation of a mode of proceedings error is therefore *541 "reserved for the most fundamental flaws" (*Becoats,* 17 N.Y.3d at 651, 934 N.Y.S.2d 737, 958 N.E.2d 865). The error must "go to the essential validity of the process and [be] so fundamental that the entire trial is irreparably tainted" (*Kelly,* 5 N.Y.3d at 119–120, 799 N.Y.S.2d 763, 832 N.E.2d 1179).

The alleged error here is not of that character. We have acknowledged the critical nature of a substantive request from a deliberating jury, and the

People v. Mack, 27 N.Y.3d 534 (2016)
55 N.E.3d 1041, 36 N.Y.S.3d 68, 2016 N.Y. Slip Op. 04321

importance of a meaningful response by the trial court (*see* ⊐*Kisoon,* 8 N.Y.3d at 134–135, 831 N.Y.S.2d 738, 863 N.E.2d 990; ⊐*People v. Lourido,* 70 N.Y.2d 428, 435, 522 N.Y.S.2d 98, 516 N.E.2d 1212 [1987]; *People v. Malloy,* 55 N.Y.2d 296, 301–302, 449 N.Y.S.2d 168, 434 N.E.2d 237 [1982], *cert. denied* 459 U.S. 847, 103 S.Ct. 104, 74 L.Ed.2d 93 [1982]; ⊐*People v. Miller,* 6 N.Y.2d 152, 156, 188 N.Y.S.2d 534, 160 N.E.2d 74 [1959]; ⊐*People v. Gonzalez,* 293 N.Y. 259, 263, 56 N.E.2d 574 [1944] ). We have refused, however, to classify under the mode-of-proceedings rubric errors that are arguably more important to the validity of the criminal process, such as the People's failure to present evidence sufficient to support a conviction (*see* ⊐*People v. Gray,* 86 N.Y.2d 10, 21–22, 629 N.Y.S.2d 173, 652 N.E.2d 919 [1995] ), or, if the defendant has an opportunity to object, an alleged error affecting the validity of a guilty plea (*see* ⊐*People v. Conceicao,* 26 N.Y.3d 375, 381–382, 23 N.Y.S.3d 124, 44 N.E.3d 199 [2015] ). We have also required preservation for "most 'errors of constitutional dimension' " (*People v. Hanley,* 20 N.Y.3d 601, 605, 964 N.Y.S.2d 491, 987 N.E.2d 268 [2013], quoting ⊐*People v. Alvarez,* 20 N.Y.3d 75, 81, 955 N.Y.S.2d 846, 979 N.E.2d 1173 [2012] ).

[7] Of pivotal importance here is counsel's knowledge of all the facts required to object to the trial court's procedure or lack of response to the jury's requests. Granted, we have recognized mode of proceedings errors in other contexts where defense counsel was aware of the information required to form an objection, including where counsel affirmatively consented to the trial court's procedure (*see e.g.* ⊐*People v. Rivera,* 23 N.Y.3d 827, 831, 993 N.Y.S.2d 656, 18 N.E.3d 367 [2014]; ⊐*Ahmed,* 66 N.Y.2d at 309–310, 496 N.Y.S.2d 984, 487 N.E.2d 894). In the *O'Rama* context, however, lack of notice is the key determinant in classifying a particular procedure as a mode of proceedings error. Notice gives counsel the opportunity to object to any possible error.

[8] When the trial court paraphrases or summarizes a jury note, thereby failing to provide counsel with meaningful notice of the specific content of the note, a mode of proceedings error occurs, "because counsel cannot be expected to object to the court's response to the jury or to frame an intelligent suggested response if counsel lacks knowledge of the specific content of a substantive jury note" ( ⊐*Nealon,* 26 N.Y.3d at 157, 20 N.Y.S.3d 315, 41 N.E.3d 1130). In other words, counsel generally cannot **1048 ***75 object to an error of which he or she is unaware. This Court's recognition of a mode of *542 proceedings error in

People v. Mack, 27 N.Y.3d 534 (2016)
55 N.E.3d 1041, 36 N.Y.S.3d 68, 2016 N.Y. Slip Op. 04321

*O'Rama* was based upon counsel's inability to "participate effectively or adequately protect the defendant's rights" if counsel lacks notice "of the actual specific content of the jurors' request" (⊟*O'Rama,* 78 N.Y.2d at 277, 574 N.Y.S.2d 159, 579 N.E.2d 189). If the court fails to inform counsel of the precise content of a substantive jury note, the court's error "ha[s] the effect of entirely preventing defense counsel from participating meaningfully in this critical stage of the trial" (⊟*id.* at 279, 574 N.Y.S.2d 159, 579 N.E.2d 189).

[9] By contrast, where counsel has meaningful notice of a substantive jury note that has been read verbatim in open court, the court's failure to discuss the note or its intended response with counsel outside the presence of the jury is not a mode of proceedings error because counsel is not prevented from objecting or from participating meaningfully (*see* ⊟*Nealon,* 26 N.Y.3d at 160–162, 20 N.Y.S.3d 315, 41 N.E.3d 1130; ⊟*Alcide,* 21 N.Y.3d at 693–694, 976 N.Y.S.2d 432, 998 N.E.2d 1056; *Williams,* 21 N.Y.3d at 934–935, 969 N.Y.S.2d 421, 991 N.E.2d 195; ⊟*Ramirez,* 15 N.Y.3d at 825–826, 909 N.Y.S.2d 1, 935 N.E.2d 791; ⊟*Starling,* 85 N.Y.2d at 516, 626 N.Y.S.2d 729, 650 N.E.2d 387). In that scenario, counsel is aware of the precise content of the note, knows that he or she has not had an opportunity to provide the court with input on its intended response, and is also aware of the court's actual response to the jury, "which counsel is hearing in open court as the court provides its response to the jury" (⊟*Nealon,* 26 N.Y.3d at 162, 20 N.Y.S.3d 315, 41 N.E.3d 1130). "Counsel therefore has all the knowledge required to make an objection, either to the court's deviation from the *O'Rama* procedure or to the court's response to the jury, or both" (*id.*).

*Nealon* and its predecessors are not controlling here because in those cases, we considered the trial court's fulfillment of its obligation under ⊟CPL 310.30 to provide meaningful notice, not its separate obligation to provide a meaningful response to the jury. Nevertheless, these cases demonstrate that we have generally refused to classify alleged errors as mode of proceedings errors in the jury note context when the record demonstrates that counsel had all the knowledge required to object, and a timely objection would have allowed the court to "easily cure[ ] the claimed error" (⊟*Ippolito,* 20 N.Y.3d at 625, 964 N.Y.S.2d 499, 987 N.E.2d 276).[3]

[10] **\*543** Here, defense counsel had the notice required to enable him to object to the trial court's procedure if he considered that approach to be prejudicial. Counsel knew the precise content of the jury notes received during the recess because the court read those notes verbatim into the record in counsel's presence. Counsel knew how the court planned to respond to those notes because the court informed counsel of its intended response. He knew that the jury had sent out another note stating that it had reached a verdict, and that the court planned to accept the verdict **\*\*1049 \*\*\*76** without responding to the outstanding notes, because the court announced its intention to recall the jury and take the verdict on the record. Counsel was in the courtroom when the jurors were recalled and knew that the trial court had not yet responded to the notes sent during the recess or asked the jurors if they still desired a response before the verdict was announced. In short, "[i]f defense counsel considered the judge's intended approach prejudicial, he certainly had an opportunity to ask him to alter course, and it behooved him to do so" (*Alcide,* 21 N.Y.3d at 694, 976 N.Y.S.2d 432, 998 N.E.2d 1056). Had counsel simply requested that the court respond to the outstanding notes before taking the verdict, or that the court ask the jurors whether they still desired a response to those notes, the court could easily have corrected the alleged error.

[11] Furthermore, to designate this alleged error as a mode of proceedings error would mandate that the trial court respond to any outstanding notes before taking the verdict even if defense counsel affirmatively requests that the court accept the verdict without responding to those notes. Mode of proceedings errors are not waivable and therefore require reversal even if the defense affirmatively consents to the court's action (*see* *Ahmed,* 66 N.Y.2d at 310–311, 496 N.Y.S.2d 984, 487 N.E.2d 894). The rule defendant proposes would therefore require a trial court to ignore a defense request, as a matter of strategy, that the court not respond to a jury note before accepting the verdict.

Defendant's rule would also incentivize a distinct tactic that diminishes the preservation rule. Here, the defense may have made a strategic choice not to challenge the trial court's procedure (*see* *King,* 27 N.Y.3d at 157, 31 N.Y.S.3d 402, 50 N.E.3d 869). Counsel, who was aware that the jury's last note before the recess declared a deadlock, may have decided that the jurors were more likely to acquit defendant if they were not given the chance to deliberate further. In such situations, if the alleged error is deemed to be a mode of

**People v. Mack, 27 N.Y.3d 534 (2016)**

55 N.E.3d 1041, 36 N.Y.S.3d 68, 2016 N.Y. Slip Op. 04321

proceedings error, "it would be unwise for counsel to **\*544** object and seek correction of the error" (⊟*Nealon,* 26 N.Y.3d at 162, 20 N.Y.S.3d 315, 41 N.E.3d 1130). If the verdict is an acquittal, counsel will have secured the desired trial outcome. If the jury convicts the defendant, counsel will have created an appellate issue requiring automatic reversal and a new trial simply by remaining silent. We decline to create a rule that would incentivize such tactics and would diminish the important purposes underlying the preservation rule.

## IV.

The disparate treatment of the two types of errors arises from the practical differences between them; one prevents counsel from "participating meaningfully in this critical stage of the trial" (⊟*O'Rama,* 78 N.Y.2d at 279, 574 N.Y.S.2d 159, 579 N.E.2d 189), and the other does not. "[I]t is defense counsel who is charged with the single-minded, zealous representation of the client and thus, of all the trial participants, it is defense counsel who best knows the argument to be advanced on the client's behalf" (⊟*People v. Hawkins,* 11 N.Y.3d 484, 492, 872 N.Y.S.2d 395, 900 N.E.2d 946 [2008] ).

The Appellate Division erred in holding that defendant was not required to preserve for appellate review his contention regarding the court's failure to respond to the jury's notes. Although the court's procedure here may have been error, it was not a mode of proceedings error, and we have no jurisdiction to review it. We therefore cannot address the People's alternative contention that the trial court did not err because the jury implicitly withdrew **\*\*1050 \*\*\*77** its earlier requests by stating that it had reached a verdict.

Defendant's remaining contentions, offered as alternative grounds for affirmance, are without merit.

Accordingly, the order of the Appellate Division should be reversed and the case remitted to that Court for consideration of the facts and issues raised but not determined on the appeal to that Court.

RIVERA, J. (dissenting).

In ▯*People v. O'Rama,* 78 N.Y.2d 270, 574 N.Y.S.2d 159, 579 N.E.2d 189 (1991), this Court stated, without reservation, that ▯CPL 310.30 imposes a duty on the trial court to meaningfully respond to a substantive juror inquiry.[1] This requirement is no mere technical nicety, but a core responsibility of the trial court which may **\*545** not be ignored or abdicated (▯*People v. Kisoon,* 8 N.Y.3d 129, 134, 831 N.Y.S.2d 738, 863 N.E.2d 990 [2007]; ▯*People v. Torres,* 72 N.Y.2d 1007, 1008–1009, 534 N.Y.S.2d 914, 531 N.E.2d 635 [1988]; ▯*People v. Ahmed,* 66 N.Y.2d 307, 310, 496 N.Y.S.2d 984, 487 N.E.2d 894 [1985] ).

A court's unresponsiveness to a jury's substantive request for information is no ordinary procedural error, nor an error of de minimis significance. As previously explained by this Court,

> "[t]here are few moments in a criminal trial more critical to its outcome than when the court responds to a deliberating jury's request for clarification of the law or further guidance on the process of deliberations. Indeed, the court's response may well determine whether a verdict will be reached, and what that verdict will be" (▯*Kisoon,* 8 N.Y.3d at 134–135, 831 N.Y.S.2d 738, 863 N.E.2d 990, citing 23 A.D.3d 18, 20, 801 N.Y.S.2d 69 [2d Dept.2005] ).

To ensure judicial vigilance of the proper discharge of this duty, "[a] ... court's failure to fulfill the 'core responsibility' under *O'Rama* is treated as a mode of proceedings error" that does not require preservation by defendant (▯*People v. Silva,* 24 N.Y.3d 294, 299, 998 N.Y.S.2d 154, 22 N.E.3d 1022 [2014], quoting ▯*Kisoon,* 8 N.Y.3d at 135, 831 N.Y.S.2d 738, 863 N.E.2d 990). Quite simply, "[a]lthough we have recognized that some departures from the procedures outlined in *O'Rama* may be subject to rules of preservation, a failure to fulfill the court's core responsibility is not" (▯*Kisoon,* 8 N.Y.3d at 135, 831 N.Y.S.2d 738, 863 N.E.2d 990 [citations omitted] ).

Moreover, we are not presented with an attempt to expand the mode of proceedings category to include a "new" error, as my colleagues maintain (majority op. at 540–541, 36 N.Y.S.3d at 73–74, 55 N.E.3d at 1046–47). Rather, this case merely requires that we apply our existing precedent to an error previously identified as one not subject to our rules of preservation. Thus, the majority's conclusion that preservation rules apply when a court utterly fails to respond to a juror's substantive inquiry disregards our commitment to stare

decisis.[2] I think this recasting of the **1051 ***78 duty ill-advised. Our adherence to this venerable doctrine "promotes the evenhanded, predictable, and consistent development of legal principles, fosters reliance on judicial decisions, and contributes to the *546 actual and perceived integrity of the judicial process" (People v. Taylor, 9 N.Y.3d 129, 148, 848 N.Y.S.2d 554, 878 N.E.2d 969 [2007] [internal quotation marks omitted], quoting Payne v. Tennessee, 501 U.S. 808, 827, 111 S.Ct. 2597, 115 L.Ed.2d 720 [1991] ). In order to overturn past precedent there must be a compelling justification to do so, which may be found where such precedent " leads to an unworkable rule, or ... creates more questions than it resolves" (id. at 149, 848 N.Y.S.2d 554, 878 N.E.2d 969), or where "a preexisting rule, once thought defensible, no longer serves the ends of justice or withstands 'the cold light of logic and experience' " (Policano v. Herbert, 7 N.Y.3d 588, 604, 825 N.Y.S.2d 678, 859 N.E.2d 484 [2006], quoting Broadnax v. Gonzalez, 2 N.Y.3d 148, 156, 777 N.Y.S.2d 416, 809 N.E.2d 645 [2004] ).

This Court's determination that a trial court's failure to respond constitutes a mode of proceedings error is not unclear, unsettled, unworkable, or rendered outdated. There is likewise no evidence that overturning this established precedent is "consistent with these principles and required by sound policy" ( People v. Bing, 76 N.Y.2d 331, 338, 559 N.Y.S.2d 474, 558 N.E.2d 1011 [1990] ). To the contrary, the bright-line rule that a court's failure to provide any response to a jury's substantive note is not subject to preservation maintains clarity, and furthers judicial compliance with the legislative intent of CPL 310.30 that no jury request for instruction on the law and matters pertinent to its consideration be left unanswered. Therefore, stare decisis counsels that we should not overturn our Court's settled precedent.

The majority seeks to pave new ground by recharacterizing a court's unresponsiveness to a jury's substantive note as an error of lesser importance to the criminal process than some others that are subject to our rules of preservation (majority op. at 541, 36 N.Y.S.3d at 74, 55 N.E.3d at 1047). The majority's view is difficult to square with this Court's previous statements that the court's core responsibility is significant because it has the potential to affect the outcome of the trial (O'Rama, 78 N.Y.2d at 279, 574 N.Y.S.2d 159, 579 N.E.2d 189; Kisoon, 8 N.Y.3d at 134, 831 N.Y.S.2d 738, 863 N.E.2d 990). Moreover, long before O'Rama, Kisoon and Silva, this Court recognized that a court's obligation to respond to jury notes is an indispensable part of the trial

People v. Mack, 27 N.Y.3d 534 (2016)
55 N.E.3d 1041, 36 N.Y.S.3d 68, 2016 N.Y. Slip Op. 04321

process. In describing Code of Criminal Procedure § 427, predecessor to ⊡CPL 310.30 and which similarly mandated that, upon request, a court provide a jury with information concerning a point of law, this Court explained that "[t]he Legislature of this State has ... made positive and absolute the requirement that 'the information required must be given'. The answering of such questions is no mere matter of conventional procedure. It is an integral part of the structure of an adequate trial" (⊡*People v. Gonzalez,* 293 N.Y. 259, 263, 56 N.E.2d 574 [1944] ).

**\*547** Nor does it matter, as the majority contends, that defense counsel was on notice of the court's failure to respond (majority op. at 541, 36 N.Y.S.3d at 74, 55 N.E.3d at 1047). The majority in *People v. Nealon* relied on this same argument to impose a preservation requirement in cases where a court fails to comply with the other half of its ⊡CPL 310.30 core responsibility, namely the requirement to provide defense counsel with meaningful notice of a jury's substantive request and an opportunity for counsel to participate in **\*\*1052 \*\*\*79** the formulation of a response (⊡26 N.Y.3d 152, 161–162, 20 N.Y.S.3d 315, 41 N.E.3d 1130 [2015] ). The dissent in *Nealon* effectively explained why a failure to object is irrelevant to a mode of proceedings error.

> "Conceptually, of course, whether an error is deemed to compromise the basic structure of a trial and thus to qualify as one affecting the mode of proceedings cannot depend upon whether it involves a deviation as to which an objection is capable of being made. Mode of proceedings errors are by reason of their fundamental incompatibility with essential process nonwaivable.... Neither the gravity of such error nor the consequently primary judicial obligation to avoid its commission is logically diminished or relieved by reason of the circumstance that a defendant is able to, but does not contemporaneously, protest its occurrence" (⊡*id.* at 166, 20 N.Y.S.3d 315, 41 N.E.3d 1130 [Lippman, Ch. J., dissenting], citing ⊡*People v. Patterson,* 39 N.Y.2d 288, 295, 383 N.Y.S.2d 573, 347 N.E.2d 898 [1976] ).

The same is true in this case. Imposition of a preservation requirement is inherently counter to the underlying premise of a mode of proceedings error, which is the type of nonwaivable error that goes to the heart of the trial process. Whether defense counsel objects to a court's unresponsiveness to a jury's substantive note is of no moment. What matters is the court's failure to comply with its mandated duty and core responsibility.

The majority argues no more persuasively here than in *Nealon* that its preservation rule is necessary to avoid the situation where a court would be required to respond to a jury note against a defendant's wishes. The majority fundamentally misunderstands the import of ⊟CPL 310.30 and our precedent. Defendant's preference or acquiescence is irrelevant because the duty works on the court, not the defendant. Just as the court may not unilaterally ignore its legislatively imposed **\*548** responsibility, neither can the defendant absolve the court of this duty by agreeing that the court need not respond to a juror's substantive request.

As a final point, the majority here contends that the preservation rule is necessary to avoid incentivizing gamesmanship by defense counsel who would merely fail to challenge a ⊟CPL 310.30 error in order to create an appellate issue (majority op. at 543–544, 36 N.Y.S.3d at 75–76, 55 N.E.3d at 1048–49). The argument is no more persuasive in this case than it was in *Nealon* because it is grounded on speculation about defense counsel's motives, and demonstrates a misunderstanding of the court's duty under ⊟CPL 310.30. As the dissent in *Nealon* argued,

> "apart from the lack of any empirical basis for the prediction that defense counsel generally would elect not to zealously represent their clients at trial in order to bank an appellate reversal years down the line, the majority's concern demonstrates a confusion over whose conduct the mode of proceedings doctrine is intended to regulate. It is not counsel's conduct that is the primary concern of the doctrine, but the court's. The doctrine recognizes that it is the court, not counsel, that is best situated to assure that the correct procedure is followed when a note requesting instruction issues from a deliberating jury, and that when the court discharges its core obligations there will be no opportunity for gamesmanship of the sort feared" (⊟*Nealon,* 26 N.Y.3d at 168–169, 20 N.Y.S.3d 315, 41 N.E.3d 1130).[3]

In defendant's case, while the court was discussing with counsel and the prosecutor **\*\*1053 \*\*\*80** its response to pending substantive jury notes, the court received indication that the jury had reached a verdict. When the court accepted the verdict without providing any response to the pending notes, or without alternatively asking the jurors whether they had withdrawn their requests, the court failed to comply with its core **\*549** responsibility under ⊟

CPL 310.30.[4] The court's inaction constituted a mode of proceedings error for which preservation is unnecessary, and, under the circumstances of this case, warrants reversal and a new trial (*O'Rama,* 78 N.Y.2d at 279, 574 N.Y.S.2d 159, 579 N.E.2d 189; *Kisoon,* 8 N.Y.3d at 135, 831 N.Y.S.2d 738, 863 N.E.2d 990; CPL 310.30; *Silva,* 24 N.Y.3d at 300, 300 n. 1, 998 N.Y.S.2d 154, 22 N.E.3d 1022 [a judge's unresponsiveness to a jury request may lead to a new trial] ). Therefore, I dissent and would affirm the Appellate Division.

Chief Judge DiFIORE and Judges PIGOTT, ABDUS–SALAAM, STEIN and GARCIA concur; Judge RIVERA dissents and votes to affirm in an opinion. Order reversed and case remitted to the Appellate Division, Fourth Department, for consideration of the facts and issues raised but not determined on the appeal to that Court.

**All Citations**

27 N.Y.3d 534, 55 N.E.3d 1041, 36 N.Y.S.3d 68, 2016 N.Y. Slip Op. 04321

## Footnotes

[1]    The jury's requests for more jury note sheets and for a smoking break are not at issue on appeal. Defendant concedes that those requests were ministerial.

[2]    The dissent asserts that we are disregarding the doctrine of stare decisis in holding that this particular alleged error is not a mode of proceedings error (*see* dissenting op. at 545–546, 36 N.Y.S.3d at 77–78, 55 N.E.3d at 1050–51). We respectfully disagree. As discussed, none of our previous cases in the *O'Rama* context, including *O'Rama* itself, considered whether an alleged failure to provide a meaningful response, standing alone, constituted a mode of proceedings error where the court's obligation to provide meaningful notice to counsel was satisfied. To the extent the Court may have suggested otherwise, this language occurred in dicta, inasmuch as in each of those cases, this Court was considering whether the trial court had satisfied its obligation to provide meaningful notice to counsel (*see* *Walston,* 23 N.Y.3d at 989, 991 N.Y.S.2d 24, 14 N.E.3d 377;

*Alcide,* 21 N.Y.3d at 692, 976 N.Y.S.2d 432, 998 N.E.2d 1056; *Kisoon,* 8 N.Y.3d at 135, 831 N.Y.S.2d 738, 863 N.E.2d 990). Further, in *Silva,* the trial court failed to fulfill both of its core responsibilities, including the responsibility to provide meaningful notice to counsel (*see Silva,* 24 N.Y.3d at 300, 998 N.Y.S.2d 154, 22 N.E.3d 1022). As the dissent acknowledges, meaningful notice to counsel is not at issue in this appeal (*see* dissenting op. at 545 n. 1, 36 N.Y.S.3d at 77 n. 1, 55 N.E.3d at 1050 n. 1).

3   We have also refused to classify an alleged error as a mode of proceedings error in other contexts where the defendant has the notice and opportunity needed to object (*see e.g. People v. King,* 27 N.Y.3d 147, 157, 31 N.Y.S.3d 402, 50 N.E.3d 869 [2016] ["If defense counsel had an objection to the procedure employed by the trial court, he should have voiced it so that the court could have corrected any alleged error"]; *Conceicao,* 26 N.Y.3d at 382, 23 N.Y.S.3d 124, 44 N.E.3d 199 [holding that challenge to alleged defect in plea allocution must be preserved by timely objection unless the defendant "faced a practical inability to move to withdraw (the) plea( )"] ).

1   The court's core responsibility additionally encompasses its CPL 310.30 duty to notify counsel of a juror's substantive inquiry, which this Court has explained requires "meaningful notice to counsel of the specific content of the jurors' request—in order to ensure counsel's opportunity to frame intelligent suggestions for the fairest and least prejudicial response" (*People v. Kisoon,* 8 N.Y.3d 129, 134, 831 N.Y.S.2d 738, 863 N.E.2d 990 [2007]; *see also O'Rama,* 78 N.Y.2d at 277, 574 N.Y.S.2d 159, 579 N.E.2d 189 [CPL 310.30 imposes a duty to provide notice to counsel of a jury inquiry and to respond meaningfully] ). This duty is not at issue in this appeal.

2   Contrary to the majority's view, the rule is clearly set forth in our precedent, and cannot be distinguished as mere dicta.

3   The majority's argument seems particularly misplaced where, as here, the court's failure to respond to a jury's substantive note is due to an intervening indication from the jury that it has reached a verdict. Given the law at the time of the defendant's trial, defense counsel may have relied on decisions from lower courts that treated the jury's announcement of a verdict as the jury's implicit withdrawal of its prior

**People v. Mack, 27 N.Y.3d 534 (2016)**

55 N.E.3d 1041, 36 N.Y.S.3d 68, 2016 N.Y. Slip Op. 04321

request for information (*People v. Albanese,* 45 A.D.3d 691, 692, 850 N.Y.S.2d 112 [2d Dept.2007], *lv. denied* 10 N.Y.3d 761, 854 N.Y.S.2d 323, 883 N.E.2d 1258 [2008]; *People v. Fuentes,* 246 A.D.2d 474, 475, 668 N.Y.S.2d 184 [1st Dept.1998], *lv. denied* 91 N.Y.2d 941, 671 N.Y.S.2d 721, 694 N.E.2d 890 [1998] ).

4    This case is distinguishable from cases where the court attempts to comply with its duty and the defendant claims the response is inadequate. In those cases, the rule of preservation applies (*see People v. Morris,* 27 N.Y.3d 1096, 36 N.Y.S.3d 80, 55 N.E.3d 1053 [2016] [decided herewith] ).

---

End of Document

© 2024 Thomson Reuters. No claim to original U.S. Government Works.

28 N.Y.3d 944
Court of Appeals of New York.

The PEOPLE etc., Appellant,
v.
**Terrance L. MACK**, Respondent.

Sept. 8, 2016.

## Opinion

Reported below, 117 A.D.3d 1450, 984 N.Y.S.2d 768.

**\*945** Motion for reargument denied [*see* 27 N.Y.3d 534, 36 N.Y.S.3d 68, 55 N.E.3d 1041 (2016) ].

## All Citations

28 N.Y.3d 944, 60 N.E.3d 407, 38 N.Y.S.3d 513 (Mem), 2016 N.Y. Slip Op. 84850

---

End of Document

© 2024 Thomson Reuters. No claim to original U.S. Government Works.

Terrance L. Mack, Petitioner, v Julie Wolcott, Superintendent.
Petition Under 28 U.S.C. § 2254 for a Writ of Habeas Corpus
Attachments

Item 11 (continued):

This section covers the proceedings *after* the Court of Appeals remitted.

(a) Name of court: Appellate Division, Fourth Department

(b) Result:

Affirmed the judgment in a 3 to 2 decision (Carni and Scudder, JJ., filed dissenting opinion)

(c) Date of result and citation:

*People v Mack* (142 AD3d 755 [4th Dept Aug. 17, 2016])

Opinion attached

(d) List all the grounds you raised:

See Item 9 (d) attachment (same direct appeal).

Did you seek further review? Yes

Result?     On October 31, 2016, one of the Appellate Division dissenters (Hon. Henry J. Scudder) denied permission to appeal to the Court of Appeals.  Order attached.

Item 12 (continued):

Did you file a petition for certiorari in the United States Supreme Court?

No.

People v. Mack, 142 A.D.3d 755 (2016)
36 N.Y.S.3d 538, 2016 N.Y. Slip Op. 05825

142 A.D.3d 755
Supreme Court, Appellate Division, Fourth Department, New York.

The PEOPLE of the State of New York, Respondent,
v.
Terrance L. MACK, Defendant–Appellant.

Aug. 17, 2016.

## Synopsis

**Background:** Defendant was convicted in the Monroe County Court, Frank P. Geraci, Jr., J., of gang assault, and defendant appealed. The Supreme Court, Appellate Division, 117 A.D.3d 1450, 984 N.Y.S.2d 768, reversed defendant's conviction and ordered new trial due to trial court's failure to respond to jury's notes before accepting verdict, and people appealed. The Court of Appeals, Fahey, J., 55 N.E.3d 1041, 36 N.Y.S.3d 68, 27 N.Y.3d 534, reversed and remitted.

**Holdings:** Upon remittitur, the Supreme Court, Appellate Division, held that:

[1] court declined to review defendant's unpreserved contention regarding unanswered jury notes, and

[2] sufficient evidence supported jury's guilty verdict.

Affirmed.

Carni and Scudder, JJ., filed dissenting opinion.

## Attorneys and Law Firms

**\*\*539** Timothy P. Donaher, Public Defender, Rochester (David R. Juergens of Counsel), for Defendant–Appellant.

People v. Mack, 142 A.D.3d 755 (2016)

36 N.Y.S.3d 538, 2016 N.Y. Slip Op. 05825

Sandra Doorley, District Attorney, Rochester (Leah R. Mervine of Counsel), for Respondent.

PRESENT: PERADOTTO, J.P., CARNI, LINDLEY, NEMOYER, AND SCUDDER, JJ.

## Opinion

MEMORANDUM:

**\*756** When this case was initially before us, we reversed the judgment convicting defendant upon a jury verdict of gang assault in the first degree (Penal Law § 120.07), concluding that County Court erred in failing to respond to two substantive jury notes that were followed by an additional note stating that the jury had reached a verdict (*People v. Mack,* 117 A.D.3d 1450, 984 N.Y.S.2d 768). Although defendant did not object to the manner in which the court proceeded, we concluded that the court's failure to respond to the two substantive notes constituted a mode of proceedings error that did not need to be preserved (*id.* at 1451, 984 N.Y.S.2d 768). The Court of Appeals reversed, holding that the "alleged error" was not of the mode of proceedings variety because the court read the jury notes into the record, and defense counsel had full "knowledge of all the facts required to object to the trial court's procedure or lack of response to the jury's requests" (*People v. Mack,* 27 N.Y.3d 534, 541, 36 N.Y.S.3d 68, 55 N.E.3d 1041). The case was remitted to us "for consideration of the facts and issues raised but not determined on the [initial] appeal" (*id.* at 544).

[1] Inasmuch as we reviewed the other substantive contentions advanced by defendant on appeal and concluded that "they are without merit" (*Mack,* 117 A.D.3d at 1451, 984 N.Y.S.2d 768), the only remaining issue to be decided is whether we should exercise our power to review defendant's unpreserved contention regarding the unanswered jury notes as a matter of discretion in the interest of justice (*see* CPL 470.15[6][a] ). We decline to do so. As the Court of Appeals noted, defense counsel "may have made a strategic choice not to challenge the trial court's procedure," and "may have decided that the jurors were more likely to acquit defendant if they were not given the chance to deliberate further" (*Mack,* 27 N.Y.3d at 543, 36 N.Y.S.3d 68, 55 N.E.3d 1041). Such a strategic decision, if made, would have been entirely reasonable considering that the jury had asked for, among other **\*\*540** things, a readback of testimony from the key prosecution witness.

Because defense counsel may have had a legitimate, strategic reason for not objecting to the court's procedure, we respectfully disagree with the dissent that defendant was "seriously prejudiced" by the court's taking of the verdict. Indeed, as the Court of Appeals also noted, "[i]f defense counsel considered the judge's intended approach prejudicial, he certainly had an *757 opportunity to ask him to alter course, and it behooved him to do so" (*id.*). Moreover, when this case was last before us, we unanimously rejected defendant's contention that defense counsel was ineffective for failing to object to the court's procedure. Any discussion of prejudice in our prior decision was dictum inasmuch as it was based on our conclusion that there was a mode of proceedings error, which is "immune ... from harmless error analysis" and "require[s] reversal without regard to the prejudice, or lack thereof, to the defendant" (⊐*Mack,* 27 N.Y.3d at 540, 36 N.Y.S.3d 68, 55 N.E.3d 1041).

The dissent suggests that defense counsel may not have objected because, relying upon the *O'Rama* jurisprudence in effect at the time of trial, he anticipated that a new trial would be ordered on appeal as a result of the court's alleged error if defendant were convicted. However, at the time of defendant's trial, as now, the appellate case law in New York supported the People's contention that "the fact that a verdict was reached before the court responded to the jury note[s] implied that the jury had resolved the issue[s] on its own" (*People v. Murphy,* 133 A.D.3d 690, 691, 20 N.Y.S.3d 127, *lv. denied* 27 N.Y.3d 1136; *see e.g. People v. Sorrell,* 108 A.D.3d 787, 793, 969 N.Y.S.2d 198, *lv. denied* 23 N.Y.3d 1025, 992 N.Y.S.2d 808, 16 N.E.3d 1288; *People v. Cornado,* 60 A.D.3d 450, 451, 874 N.Y.S.2d 463, *lv. denied* 12 N.Y.3d 913, 884 N.Y.S.2d 694, 912 N.E.2d 1075). In any event, remaining silent when the trial court makes an erroneous ruling with the hope of obtaining a reversal on appeal is the type of gamesmanship that the Court of Appeals sought to discourage by determining that the "alleged error" in this case was not a mode of proceedings error (⊐*Mack,* 27 N.Y.3d at 543–544, 36 N.Y.S.3d 68, 55 N.E.3d 1041; *see generally* ⊐*People v. Nealon,* 26 N.Y.3d 152, 162, 20 N.Y.S.3d 315, 41 N.E.3d 1130).

[2] With respect to the proof of guilt, defendant did not challenge on appeal the weight or sufficiency of the evidence, and there is ample evidence supporting the jury's verdict. The eyewitness who saw defendant attack the victim with a bottle knew defendant from the neighborhood, having seen him "quite a few

People v. Mack, 142 A.D.3d 755 (2016)
36 N.Y.S.3d 538, 2016 N.Y. Slip Op. 05825

times." It was not as though she were identifying a stranger. The testimony of the jailhouse informant also was corroborated by defendant himself, who, during a recorded telephone conversation from jail with his father, essentially acknowledged that he made the damaging admissions to the informant. We therefore respectfully disagree with the dissent that justice would be served by the exercise of our discretionary power to review defendant's unpreserved contention.

All concur except CARNI and SCUDDER, JJ., who dissent and vote to reverse in accordance with the following memorandum:
In our view, defendant **\*758** was "seriously prejudiced" by County Court's failure to comply with its core requirement pursuant to CPL 310.30 to respond to a substantive jury note requesting further legal instruction on, inter alia, "the meaning of reasonable doubt," before accepting a verdict (People v. Lourido, 70 N.Y.2d 428, 435, 522 N.Y.S.2d 98, 516 N.E.2d 1212). Thus, upon remittitur from the Court of Appeals **\*\*541** (People v. Mack, 27 N.Y.3d 534, 36 N.Y.S.3d 68, 55 N.E.3d 1041), we would review, as a matter of discretion in the interest of justice (see CPL 470.15[6][a] ), defendant's contention that the court's failure to respond to the note constitutes reversible error, reverse the judgment, and remit the matter for a new trial. We therefore respectfully dissent.

As we explained in our prior decision (People v. Mack, 117 A.D.3d 1450, 984 N.Y.S.2d 768), defendant was convicted of gang assault in the first degree (Penal Law § 120.07), which resulted in the death of the victim from two stab wounds. A police witness testified that 75 to 100 people may have witnessed the attack, but the only evidence implicating defendant was the testimony of two witnesses, i.e., an eyewitness and a jailhouse informant. The eyewitness was a 19–year–old woman who viewed the incident, which occurred at dusk, from a distance of 150 feet. The eyewitness advised the police on the night of the attack that she could not identify the perpetrator. She subsequently testified, however, that she had told that to the police because she was afraid. The eyewitness identified defendant in a photo array several weeks after the attack. The jailhouse informant admitted in his testimony that he had received a benefit for his testimony, that he had seen news accounts that defendant had been charged in connection with the victim's death, and that he was a friend of the victim's brother. Thus, in our view, the evidence against defendant was

People v. Mack, 142 A.D.3d 755 (2016)
36 N.Y.S.3d 538, 2016 N.Y. Slip Op. 05825

not overwhelming. Defendant testified that he was at his home in another city on the evening of the crime, and five defense witnesses testified either that defendant was at his home, or that he was not part of the attack on the victim.

The jury advised the court at 5:42 p.m. that it was deadlocked, after deliberating for approximately five hours, which included requests for readbacks of certain testimony of both the eyewitness and the jailhouse informant. The court instructed the jury to continue deliberating and, at 6:02 p.m., advised counsel that it would stand in recess until 7:30 p.m. There is no indication in the record that the jury was aware of the recess and, from 6:02 p.m. until the court reconvened at 7:51 p.m., the jury sent three notes, two of which were substantive. At issue here is the note sent at 6:20 p.m., wherein the jury requested "instructions regarding the importance of a **\*759** single witness in a case versus multiple witnesses and the meaning of reasonable doubt read back to us." The court received a final note at 7:54 p.m., three minutes after it had reconvened, stating that the jury had come to a verdict. The court accepted the verdict without addressing the jury's request and with no objection from defense counsel. Although " '[n]ot every failure to comply with a jury's request for information during deliberation is reversible error' " (⌐ *Lourido,* 70 N.Y.2d at 435, 522 N.Y.S.2d 98, 516 N.E.2d 1212), we concluded in our prior decision that the error in failing to respond to the request for further legal instruction on these critical issues " 'seriously prejudiced' " defendant (⌐*Mack,* 117 A.D.3d at 1451, 984 N.Y.S.2d 768, quoting ⌐*Lourido,* 70 N.Y.2d at 435, 522 N.Y.S.2d 98, 516 N.E.2d 1212). We adhere to our position that the error, despite the lack of preservation, warrants reversal.

The Court of Appeals and the majority correctly note that defense counsel "may have made a strategic choice not to challenge the trial court's procedure" (⌐ *Mack,* 27 N.Y.3d at 543, 36 N.Y.S.3d 68, 55 N.E.3d 1041). The Court of Appeals used that reasoning, however, as part of its explanation for declining to include the circumstance at issue here in the category of those errors that encompass "a 'very narrow exception' to the preservation rule" **\*\*542** (⌐*id.* at 540). We cannot agree with the majority that the reasoning employed by the Court of Appeals to limit the category of errors that constitute mode of proceedings errors should be applied to our determination whether to exercise our interest of justice jurisdiction. We also disagree with the majority that a strategic choice of counsel to remain silent when the court advised the parties that it would accept the verdict should be used as a ground to decline to exercise our interest

People v. Mack, 142 A.D.3d 755 (2016)
36 N.Y.S.3d 538, 2016 N.Y. Slip Op. 05825

of justice jurisdiction under the facts presented here. Indeed, as the majority properly notes, we concluded that defendant was not denied effective assistance of counsel. In other words, in addition to the potential strategic choices the Court of Appeals addressed (*see* *Mack,* 27 N.Y.3d at 543–544, 36 N.Y.S.3d 68, 55 N.E.3d 1041), counsel may have anticipated under the *O'Rama* jurisprudence in effect at the time of trial that this Court would grant defendant a new trial, which indeed we did. Notwithstanding the appellate authority from other Departments cited by the majority, the determination whether the violation of the court's core responsibility pursuant to CPL 310.30 to provide a meaningful response to the substantive jury notes constituted a mode of proceedings error was not definitively decided until the Court of Appeals decided in this case that it was not (*see* *id.* at 544). In our view, the determination whether to exercise our interest of justice jurisdiction should not be based upon possible defense strategies or tactics. Instead, the determination whether to exercise **\*760** our interest of justice jurisdiction should be based on whether justice would be served. In our view, justice would be served under the facts presented here.

As we stated in our prior decision "there are few moments in a criminal trial more critical to its outcome than when the court responds to a deliberating jury's request for clarification of the law ... [T]he request for a readback of the instruction on reasonable doubt, *the determination of which is the crux of a jury's function,* and for a readback of the instruction regarding the importance of a single witness in a case versus multiple witnesses, demonstrates the confusion and doubt that existed in the minds of the jury with respect to ... crucial issue[s] ... The jury is *entitled* to the guidance of the court and may not be relegated to its own unfettered course of procedure" (*Mack,* 117 A.D.3d at 1451, 984 N.Y.S.2d 768 [internal quotation marks omitted and emphasis added] ). The jury waited over 1 ½ hours for a response to its request for the clarification of those crucial legal instructions before rendering a verdict. In our view, unlike a factual issue that the jury may resolve on its own (*see id.*), the jury could not resolve "the meaning of reasonable doubt" or "the importance of a single witness in a case versus multiple witnesses" without further guidance from the court. We therefore conclude that reversal is warranted in the interest of justice because defendant was seriously prejudiced as a result of the court's failure to comply with its "core responsibility under the statute ... to provide a meaningful response to the jury" before accepting the verdict ( *People v. Kisoon,* 8 N.Y.3d 129, 134, 831 N.Y.S.2d 738, 863 N.E.2d 990; *see*

CPL 310.30; *People v. O'Rama,* 78 N.Y.2d 270, 277, 574 N.Y.S.2d 159, 579 N.E.2d 189).

Now, upon remittitur from the Court of Appeals and having considered the facts and issues raised but not determined on the appeal to this Court,

It is hereby ORDERED that, upon remittitur from the Court of Appeals, the judgment so appealed from is affirmed.

## All Citations

142 A.D.3d 755, 36 N.Y.S.3d 538, 2016 N.Y. Slip Op. 05825

---

End of Document

© 2024 Thomson Reuters. No claim to original U.S. Government Works.

SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Fourth Judicial Department

KA 09-01764

THE PEOPLE OF THE STATE OF NEW YORK, RESPONDENT,

V

TERRANCE L. MACK, DEFENDANT-APPELLANT.

Indictment No: 2008-0921B

I, Henry J. Scudder, Associate Justice of the Appellate Division, Fourth Judicial Department, do hereby certify that, upon the motion of appellant pursuant to CPL 460.20 for permission to appeal to the Court of Appeals from the order of this Court entered August 17, 2016 affirming a judgment of the Monroe County Court rendered June 17, 2009, there is no question of law presented which ought to be reviewed by the Court of Appeals, and permission to appeal is hereby denied.

Dated: 10/31/16

Hon. Henry J. Scudder
Associate Justice

Terrance L. Mack, Petitioner, v Julie Wolcott, Superintendent.
Petition Under 28 U.S.C. § 2254 for a Writ of Habeas Corpus
Attachments

Item 15: Monroe County Court Decision and Order attached.

Item 15 (d)    List all the grounds you raised (in CPL 440 motion, asking for a new trial)

(1)    The People's failure to disclose the criminal conviction of a key prosecution witness (Charnette Grayson) deprived Mr. Mack of due process and a fair trial (US Const, Amend.s V, VI, XIV; *Brady v Maryland*, 373 US 83 [1963]).

(2)    The People's failure to serve and file notice of an alibi rebuttal witness (Samuel Soprano) deprived Mr. Mack of due process and a fair trial (*Wardius v Oregon*, 412 US 470 [1973])

(3)    Defense counsel's failure to *investigate* the key alibi witness (Christopher Travis White) and his failure to call three additional alibi witnesses (Bessie Mack, Jerome Walker and Sonia Spaight) deprived Mr. Mack of his constitutional right to the effective assistance of counsel, due process and a fair trial (*Strickland v Washington*, 466 US 668, 694 [1984]).

(4)    Cumulative prejudice resulting from the errors under Points I, II and III as well as other instances of ineffective assistance of counsel (CPL 440.10 [1] [h]).  The professional blunders included:

* Unnecessary and Premature Disclosure of defense witness statements;

* Failing to consult with or call an expert witness on identification or to otherwise adequately prepare for the presentation of a mistaken identification defense;

* Multiple errors surrounding the trial admission of a photo array;

* Failing to elicit Mr. Mack's prompt report of alibi:

Terrance L. Mack, Petitioner, v Julie Wolcott, Superintendent.
Petition Under 28 U.S.C. § 2254 for a Writ of Habeas Corpus
Attachments

- Not Eliciting Important Physical Discrepancies between Mr. Mack and the suspect;

- Hearsay Statements from the Witness's Father;

- Failing to cross-examine the last-minute, jailhouse witness about the facts underlying his youthful offender adjudication for robbery;

- Failing to Object to Polygraph Testimony;

- Failing to establish the time for sunset (6:56 p.m.) and for the end of twilight (7:24 p.m.) when the crime occurred at 7:31 p.m.;

- Ineffective closing statement;

- Failing to object to the taking of the verdict without the court giving a response to three unanswered, defense-friendly jury notes;

(5) Disclosure of records possessed by the People, based upon Mr. Mack's claim of actual innocence (CPL 440.10 [1] [h]), the People's constitutional and ethical duty to seek justice and to promote due process of law, and a defendant's constitutional right to due process and not to be subjected to cruel and unusual punishment (US Const, Amend V, VIII);

STATE OF NEW YORK
COUNTY COURT                    COUNTY OF MONROE

_____

THE PEOPLE OF THE STATE OF NEW YORK,


                        -vs-                            Ind. No.: 2008-0921B

TERRANCE L. MACK,

                        Defendant.

_____

APPEARANCES:

*For the People:*        SANDRA DOORLEY
                         Monroe County District Attorney
                         By: Leah Mervine, Esq.
                         Monroe County District Attorney's Office
                         47 South Fitzhugh Street
                         Rochester New York 14614

*For the Defendant:*     TIMOTHY DONAHER
                         Monroe County Public Defender
                         By: David Juergens, Esq.
                         Assistant Public Defender
                         10 North Fitzhugh Street
                         Rochester, New York 14614

## DECISION AND ORDER

CIACCIO, J.

Defendant was convicted after a jury trial of Gang Assault in the First Degree for his complicity in the killing of Latasha Shaw, and sentenced to a determinate term of 25 years plus five years of post-release supervision. By Notice of Motion dated January 13, 2017, he moved pursuant to CPL § 440.10[1][h] to vacate the conviction on the ground that defense counsel had rendered ineffective assistance. The People opposed by Affirmation dated March 22, 2017.

Following motion argument, this Court granted a hearing (CPL § 430.30[5]) on the limited issue of whether defense counsel had rendered ineffective representation in failing to interview alibi witnesses and/or then failing to call them as witnesses at the trial.

The hearing was held on November 20-21, 2017. Counsel for the defendant called six witnesses: the defendant; his trial counsel Paul J. Vacca, Jr.; Geoffrey Resnick, a private investigator retained by Mr. Vacca; Bessie Mack and Sonia Spaight, both of whom were at the scene of the assault; and Christopher Travis White, who it was offered was with the defendant in Elmira at the time of the assault. The People did not call any witnesses or offer any proof.

In making its determination, the Court has read and considered the entire transcript of the trial as well as all prior and post-trial written submissions.

What follows are the Court's Findings Fact and its Conclusions of Law based on the evidence it finds credible and accurate.

## Findings of Fact

On September 29, 2007 at around 7:30 p.m., a gang attacked Latasha Shaw and beat her to death. The attack took place at the corner of Dewey Avenue and Driving Park in the City of Rochester.

Thirteen months later, in November of 2008, the defendant Terrance Mack was arrested and charged with Gang Assault in the First Degree, as a direct actor and as an accomplice under Penal Law §20.00.

Attorney Paul J. Vacca Jr. was assigned to represent the defendant. Mr. Vacca has practiced criminal law since his admission to the bar in 1977. He was an assistant district attorney for several years following his admission to the bar and has since been in private

practice. He has handled thousands of felony criminal cases, and been lead trial counsel on approximately 150 felony trials.

Vacca received authorization to retain Geoffrey Resnick, a private investigator, and tasked him with identifying and locating potential alibi witnesses, as counsel was aware that the defendant had asserted, since the time of his arrest, that he was not at the scene of the gang assault but rather, was in Elmira, where he resided with his girlfriend Jessica Smith and their daughter. Resnick interviewed the defendant's parents and other witnesses and provided counsel a list of potential alibi witnesses.

Vacca filed two alibi notices (Exhibits N and O) naming 18 witnesses. On the list were Bessie Mack and Jerome Walker (a married couple), who were living at 310 Driving Park on the day Shaw was killed. Also on the list was Sonia Spaight, the defendant's aunt. Counsel or his investigator had learned that Bessie Mack, Jerome Walker and Sonia Spaight were inside 310 Driving Park at the time of the attack on Shaw. In statements given to Resnick, each potential witness said he/she did not witness the attack, but rather heard that something was going on and stepped outside and onto the porch of 310 Driving Park just after the attack.

Neither Bessie Mack nor Jerome Walker were called to testify at trial, although both had been taken into police custody immediately after the attack and questioned. Ms. Spaight also was not called to testify, although she had been served with a subpoena. Defense counsel called three other witnesses who had maintained that they were at the scene of the attack, and each testified that the defendant was not present.

Prior to trial the defendant gave Resnick the names of several witnesses who could say they were with him in Elmira on the day of the attack. They were Christopher Travis White,

James Jenkins, Precious Scott and Jessica Smith. Resnick located and interviewed Smith and Scott, and they were called to testify at the trial.

Jessica Smith testified that at about 6:00 a.m. she left her apartment which she shared with the defendant and their one-year old daughter in Elmira, New York, and went to her job at United Cerebral Palsy. Defense counsel produced a card from her place of employment that indicated that she had logged into work at 6:57 a.m. and logged out at 7:19 p.m. Smith said that when she left the apartment, her boyfriend, the defendant, was present with their daughter in his care. When she got home he was at the apartment with their daughter.

Precious Scott testified that she lived in Elmira and occasionally took care of the defendant's daughter. At around 11:30 a.m. the defendant and Christopher Travis White stopped by her apartment, where she was taking care of her son, and delivered a McDonald's meal.

Resnick did not speak with White or Jenkins, but informed Vacca by letter dated March 5. 2009 that he had learned that both were in the custody of the New York State Department of Corrections ("DOCCS"). He told Vacca that he was suspending his investigation efforts until he was provided with further direction. Neither White nor Jenkins was interviewed or subpoenaed to testify.

After the trial, defendant moved to vacate the conviction on the ground of newly-discovered evidence (Criminal Procedure Law §330.30[3]). In an affidavit in support of the motion, Vacca claimed that he learned, after the trial, of the whereabouts of Christopher White, who had recently been released from DOCCS.

Called as a witness for this hearing, Vacca said he acknowledged he had received and reviewed the letter from Resnick in which Resnick said that he knew where to find Christopher

White and James Jenkins. He said however that he "forgot" about it at the time he filed the affidavit in support of the CPL § 330 motion.

Asked why he did not call White as a witness, Vacca explained that the defendant had expressed his belief that the "they (White and Jenkins) are in custody, it's going to look bad before a jury having someone testify who is in custody …. they may hurt me, don't call them." By way of an explanation, after the fact, as to why he didn't call the two alibi witnesses who could put the defendant in Elmira at the time of the incident, Vacca seemed to appropriate as his own trial strategy defendant's reluctance to call White, saying "we had enough people, five, plus two that the prosecution had for a total of seven that we felt were enough alibi witnesses without causing problems." He added in response to the People's questions on cross-examination that he had "tried to secure the witnesses that would be the most credible before a jury, most believable before a jury and support the defendant's position" and that the witnesses "…we chose were the best witnesses to testify about this case."

For his part Resnick did not recall ever hearing the defendant say he didn't want White called as a witness – "I would've written it down."

In any event, White was not called to testify at the trial. The Court finds Mr. Vacca to have been credible in relating that he forgot about White's presence when he made the CPL 330 motion. As to whether Vacca failed to call White and Jenkins as witnesses because he formulated a trial strategy based on what defendant's comments, or because the defendant told him not to call him as a witness, the Court finds that testimony inaccurate.

White testified at the hearing. He said he spent much of the day with the defendant in Elmira. He testified he met the defendant on the morning of incident "had to be around 9:00". He met him at the apartment on Hawthorne Court, but couldn't remember the number. He said he

and Mack and the little girl spent the day doing "riding around ... run around stuff like that." Asked what Mack does with the baby as they "run around," White said, "he takes the baby with him ... car seat, stuff like that." He also mentioned that Mack would use a stroller, "whatever, that's how you proper manage of a baby." Asked about other activities they may have engaged in that day, White said, "we went to the store (West End Bodega) ... I don't remember the exact time ... I don't remember the specific activities of that day." At some point he recalled that he was sitting next to Mack and Mack got a phone call, "someone saying they have your family in custody about or under investigation about a murder or something like that." He said he was with Mack and Mack's daughter when the phone call came in (although that apparently contradicts Jessica Smith's testimony that she got home at 7:19 p.m.).

White testified that if he had been called to testify at the trial, he would have said that he spent the day with the defendant. The Court finds him to be credible on that statement alone, in other words, on what he would have said if he had been called to testify.

Defendant Tarrance Mack testified credibly that when he first met Mr. Vacca he told him he was in Elmira, but he could not remember what names he gave him of people who could verify his presence there. At some point before the trial he talked to Vacca about Christopher White, which was a person who would testify for him as an alibi witness. Mack never told his attorney Paul Vacca not to call White and Jenkins as witnesses.

Sonia Spaight credibly testified at the CPL 440 hearing. She stated that the defendant was not present in the vicinity of 310 Driving Park on the day of the attack; that she had been subpoenaed, came to court, but was never called to the stand.

## Conclusions of Law

Defendant argues that he was deprived of effective assistance of counsel under both the state and federal constitutions (US Const, 6th Amend, NY Const, Art 1, § 6) in that defense counsel's decision not to interview and call Mr. White was based on either (1) having acceded to the defendant's direction, in which case the defendant was deprived of his attorney's professional judgment on a critical, strategic decision, or (2) inexcusable attorney neglect.

In evaluating the claim of ineffective representation under the state standard, "which affords greater protection than its federal counterpart" (*People v.* Conway, 148 AD3d 1739 [4th Dept 2017]), the burden is on the defendant to "demonstrate the absence of strategic or other legitimate explanations for counsel's alleged failure" (*People v Pavone*, 26 NY3d 629, 646 [2015]; *see People v Barboni*, 21 NY3d 393, 405-406 [2013]). "Absent such a showing, it will be presumed that counsel acted in a competent manner and exercised professional judgment" (*People v Rivera*, 71 NY2d 705, 709 [1988]). The New York State Constitution, which provides greater protection than its federal counterpart, is satisfied when "the evidence, the law, and the circumstances of a particular case, viewed in totality and as of the time of the representation, reveal that the attorney provided meaningful representation" (*People v Baldi*, 54 NY2d 137, 147 [1981]; *see People v Benevento*, 91 NY2d 708, 712 [1998]).

It is clear the defendant's "'right to representation does entitle him to have counsel conduct appropriate investigations, both factual and legal, to determine if matters of defense can be developed, and to allow himself time for reflection and preparation for trial'" (*People v Bennett*, 29 NY2d 462, 466 [1972]; quoting *Coles v Peyton*, 389 F2d 224, 226 [4th Cir 1968]). However, "a reviewing court must be careful not to 'second-guess' counsel, or assess counsel's performance with the clarity of hindsight, effectively substituting its own judgment of the best

approach to a given case" (*Pavone* at 647 [internal quotation omitted]) "'The test is 'reasonable competence, not perfect representation'" (*Pavone* at 647, quoting *People v. Modica*, 64 NY2d 828, 829[1985]).

Under the federal standard as set forth in *Strickland v. Washington*, 466 US 668, 104 SCt 2052, 80 LEd 2d 674 [1984], to sustain a claim of ineffective assistance, a "defendant must show that counsel's performance was deficient, and that the deficient performance prejudiced the defense" (*People v Wosu*, 55 AD3d 1253, 1255 [4th Dept 2008] [internal quotation omitted]). While the Court of Appeals has "from time to time referred to the *Strickland* standard (of the requirement of a showing of prejudice) and measured counsel's performance under it, we have never applied it with such stringency as to require a defendant to show that, but for counsel's ineffectiveness, the outcome would probably have been different" (*People v Stultz*, 2 NY3d 277, 283 [2004]). Nonetheless, the Court continues "to regard a defendant's showing of prejudice as a significant but not indispensable element in assessing meaningful representation. Our focus is on the fairness of the proceedings as a whole" (*People v Stultz*, 2 NY3d 277, 284 [2004]).

Here, there is no doubt that defense counsel conducted an extensive pre-trial investigation. He immediately retained the services of an investigator to locate and interview potential alibi witnesses. Vacca followed up with his own interviews and traveled to Elmira to interview a number of witnesses. At trial, he conducted aggressive and probing cross-examination of the People's witnesses. He put on extensive proof, calling to testify five witnesses as well as the defendant, all with a coherent and focused strategy of proving that the defendant was not present at the scene of the attack.

However, through what the Court finds was simple neglect, he failed to interview alibi witnesses Christopher White and James Jenkins. Amid the blizzard of paperwork and preparation

that comes with the defense of a serious case such as this one, defense counsel must have pushed to the side the letter from Resnick that White had been located. In the light of Mr. Vacca's long and distinguished career, and his extensive experience *par excellence* among his peers locally in the field of criminal defense, no other excuse makes sense when one considers his Affidavit in support of the CPL 330.30 motion and his averment that the revelation that Christopher White had been found was "newly-discovered evidence."

At the CPL 440 hearing, his explanation for not calling White - that he had enough credible alibi witnesses and did not want to taint the jury by placing on the stand someone who had been hauled in from state prison - is reasonable on its face, but is the product of not entirely accurate recollection of what his thinking was prior to trial. In the context of this case, the failure to call Christopher Travis White as a witness cannot qualify as a "conscious, reasonably informed decision" (*Pavel v Hollins*, 262 F3d 210 [2d Cir 2001]) that reflected a "'reasonable investigation and preparation of defense witnesses'" (*People v Conway*, 118 AD3d 1290, 1291 (4th Dept 2014], quoting *People v. Jenkins*, 84 AD3d 1403, 1408 [2d Dept 2011]).

Mack testified at trial that on September 29, 2007 he went to see Precious Scott with Christopher White, that he was with Christopher White most of the day, that White provided the transportation for him as they went around town, and that White was with him when he found out about the gang assault and that family members had been taken into custody. White's absence from the trial left then a gap that the People exploited in their closing argument: "All of the witnesses were blood relatives." Christopher White was not a relative. Defendant "rattled off a bunch of names of all the people he was with, all these males. *You haven't heard from them* (emphasis added)."

No doubt White has issues that would have eroded his credibility at trial, issues to which this Court can attest after having heard him testify. Besides his prison and criminal record, he was unclear about details of the time spent with Mack and his daughter. One would have thought having spent an entire day with an infant, he would be able to recall more details than just "riding around" and stopping by the bodega. He lacked the relaxed demeanor and assurance on the stand that are often for a jury the hallmark of credibility (*see* CJI 2d Final Instructions, p. 10, Credibility Factors) ("Did the manner in which the witness testified reflect upon the truthfulness of that witness's testimony?). He would have made a less than ideal witness.

Nonetheless, the limited evidence on which the People's case was built – one eyewitness, one prison informant and one jail call – should have signaled that, based on what White could say about being with Mack at the time of the attack, White was a key and perhaps indispensable witness.

The People's proof consisted of only a few witnesses. Eyewitness Meghan Torres was certain in her identification of the defendant as the person she saw hit the victim with a bottle, but she was unable to describe the defendant's physical characteristics with any detail, as he was wearing nondescript clothing - "blue jeans, brown shirt, brown hat," was of average build (on one occasion she testified that the defendant was five feet eight inches, and another time, five feet five or six inches), and his hat partially obscured his eyes.

The medical examiner testified that the victim was struck with a blunt object, like a bottle, but the defense never contested that a bottle was used to bludgeon Latasha Shaw, only that it wasn't the defendant who wielded it.

The inmate at the Monroe County Jail, one Ronaldo Marcell Donald, testified he was walking with Mack in the jail and asked him "why he was in here." Mack admitted to him that he "told people" he had been in "Geneva, but that "all he did" was he grabbed the defendant and held her. This contradicted the account given by Meghan Torres, who testified that some unidentified person had "grabbed" the victim and held her so that others could catch up.

In a recorded jail call between the defendant and his father, the defendant seemed to acknowledge "running his mouth off" in talking with the inmate and by implication having committed the assault.

Finally, the victim's daughter who was present at the scene of the assault testified that she only saw females attacking her mother, although other witnesses called by the People, who were unable to identify the defendant, said that males and females were involved.

Defendant argues that whether trial counsel rendered effective representation should be seen in the context of not only having not called White but also in failing to call three other alibi witnesses, Bessie Mack, Jerome Walker and Jessie Spaight. They had given statements that they were at 310 Driving Park the entire day of September 29, 2007 and never saw the defendant. Bessie Mack and Spaight repeated that contention in testimony at this hearing, and each person testified that the defendant was never there. Sonia Spaight also testified that while she had been subpoenaed, and would have testified that the defendant was not present at 310 Driving Park and that all the attackers were female, no arrangement was made for her to testify.

Thus, defendant argues that the failure to interview and call White as an alibi witness, either alone or in combination with the failure to call the other alibi witness, prejudiced him to the extent that the trial was unfair and he was deprived of meaningful representation. "Under the

State Constitution, 'prejudice' is examined more generally in the context of whether defendant received meaningful representation" and although "the inquiry focuses on the quality of the representation provided to the accused, the claim of ineffectiveness is ultimately concerned with the fairness of the process as a whole rather than its particular impact on the outcome of the case. (*Benevento* at 713-714).

However, it is doubtful that White's testimony, had he testified at trial, would have made a difference. He could not give specific details about what happened on the day in question. He left out details that should have been prominent in his memory, even given the lapse of time. He was evasive about his prior criminal history. As noted above, his demeanor did not inspire a perception of integrity and honest respect for the truth.

Thus, while this Court credits his testimony that he never spoke with defense counsel, and was never called to testify, and that if he had been called, he would have testified that he was with the defendant on the day in question, it is unlikely, had he testified at trial, that a jury would have believed him when he said he was with the defendant or credited his testimony to an extent necessary to reach a different result.

While defense counsel's failure to call White as a witness was not the result of any strategy but rather was the product of neglect, it had in all likelihood no net effect. In the context of the "proceedings as a whole" (*see Stultz* at 284) defendant was not prejudiced by an unfair trial (*People v Flores*, 84 NY2d 184, 188-189 [1994]) nor was he deprived of *meaningful* representation. The circumstances of this case, "viewed in totality and as of the time of the representation, reveal that [Mr. Vacca] provided meaningful representation'" (*People v Bergman*, 56 AD3d 1225, 1225 [4th Dept 2008], *lv denied* 12 NY3d 756 [2009], quoting *Baldi* at 147). Mr. Vacca's failure to call Christopher White was perhaps egregious, but having observed

and heard White's testimony, this Court cannot say that counsel's failure to call White was prejudicial.

Nor did the decision – more strategic than neglectful – to not call Sonia Spaight, Bessie Mack and Jerome Walker deny the defendant effective assistance of counsel. Their testimony was compromised by their relation to the defendant and was merely cumulative of other witnesses. Spaight's credibility was suspect, as she had had given a statement that she arrived at Ms. Mack's house only after the stabbing had already occurred. She reportedly arrived to secure the house after she learned that Ms. Mack and Mr. Walker were detained.

Both witness's ability to recall dates and specific events was not reliable. Vacca was justifiably concerned that their testimony would not have been helpful.

Jerome Walker did not testify at the hearing as he passed away in 2013. It is unclear what testimony he could have provided. He was interviewed by Mr. Resnick as a potential alibi witness. Mr. Vacca made the decision not to call him.

The cases cited by the defendant do not support his position.[1] Rather, they hold that it was error to deny the CPL 440 motion without granting a hearing on the issue of counsel's failure to investigate an alibi defense. In each case the appellate division remanded for a hearing on the issue. And, after a hearing three of the trial courts rejected the defendant's ineffective assistance argument finding that the defendant had failed to meet his burden in demonstrating the absence of strategic or other legitimate explanations for counsel's alleged failure. In each case the appellate division affirmed[2].

---

[1] (*People v Conway*, 118 AD3d 1290, 1291 [4th Dept 2104]; *People v Dombrowski*, 87 AD3d 1267, 1268 [4th Dept 2011]; People v Mosley, 56 AD3d 1140 [4th Dept 2008]; People v Casticone, 224 AD2d 1019 [4th Dept 1996])

[2] (*People v Conway*, 148 AD3d 1739 [4th Dept 2017]; *lv denied* 29 NY3d 1077 [2017]; *People v Dombrowski*, 94 AD3d 1416 [4th Dept 2012]; *lv denied* 19 NY3d 959 [2012]; *People v Casticone*, 239 AD2d 929 [4th Dept 1997]; *lv denied* 90 NY2d 1010 [1997]) The outcome in Mosley is unclear as the result of the hearing is unpublished the subsequent appeal was dismissed upon stipulation.

Here, Vacca called three witnesses who testified to having witnessed the attack (Kionna Speed, Carolyn McHenry and Shatora Hampton). He was justified in concluding that they offered more credible testimony than Bessie Mack or Sonia Spaight, who clearly did not witness the attack.

As defendant's remaining contentions are without merit, the motion to vacate the conviction is **DENIED**.

This constitutes the Decision and Order of the Court.

May **11**, 2018
Rochester, New York

HON. CHRISTOPHER S. CIACCIO
MONROE COUNTY COURT JUDGE

Terrance L. Mack, Petitioner, v Julie Wolcott, Superintendent.
Petition Under 28 U.S.C. § 2254 for a Writ of Habeas Corpus
Attachments

Item 15 (e) (continued) This "Yes" response requires clarification.

The County Court granted a partial hearing that was strictly limited to the assigned attorney's failure to investigate Christopher Travis White as an alibi witness and his concurrent failure to call three additional alibi witnesses (Bessie Mack, Jerome White, and Sonia Spaight). The court precluded any inquiry into any other claims of ineffective assistance of counsel.

Item 15 (f) (continued) The County Court found that the assigned attorney had no strategy reason for his failing to investigate Christopher Travis White as an alibi witness but made an erroneous determination that Mr. Mack suffered no prejudice from this unprofessional blunder.

As a result, the court denied the CPL 440 motion.

Item 15 (g) (continued)

Although this result (the original denial of the CPL 440 motion) occurred on May 11, 2018, it was not the end of the story.

On November 7, 2018, Hon. Gerald J. Whalen, Presiding Justice of the Appellate Division, Fourth Department, granted permission to appeal.

Order attached.

# SUPREME COURT OF THE STATE OF NEW YORK
## Appellate Division, Fourth Judicial Department

KA 18-01203

THE PEOPLE OF THE STATE OF NEW YORK, RESPONDENT,

V

TERRANCE L. MACK, DEFENDANT-APPELLANT,

Indictment No.: 2008-0921B

I, Gerald J. Whalen, Presiding Justice of the Appellate Division, Fourth Judicial Department, do hereby certify that upon the motion of defendant for a certificate granting leave to appeal pursuant to CPL 460.15 from an order of the Monroe County Court dated May 11, 2018, there are questions of law or fact which ought to be reviewed by this Court, and permission to appeal is hereby granted.

DATED: 11/7/18

Hon. Gerald J. Whalen
Presiding Justice

*Note:     Within 15 days after issuance of this certificate, a copy of this certificate and a notice of appeal must be filed with the clerk of the court in which the order being appealed was entered (*see*, CPL 460.10 [4] [b]).

-2-

Terrance L. Mack, Petitioner, v Julie Wolcott, Superintendent.
Petition Under 28 U.S.C. § 2254 for a Writ of Habeas Corpus
Attachments

Item 15 (continued):

This section covers Mr. Mack's appeal of the first denial of his CPL 440 motion by the County Court (Ciaccio, J.).

(a) Name of court: Appellate Division, Fourth Department

(b) Result: Reversed the County Court order and remitted to that court for an expanded hearing on all claims of ineffective assistance of counsel.

*People v Mack* (195 AD3d 1601 [4th Dept 06/17/2021]) – attached.

People v. Mack, 195 A.D.3d 1601 (2021)

145 N.Y.S.3d 917, 2021 N.Y. Slip Op. 03982

195 A.D.3d 1601
Supreme Court, Appellate Division, Fourth Department, New York.

The PEOPLE of the State of New York, Respondent,
v.
**Terrance L. MACK**, Defendant-Appellant.

1192
|
KA 18-01203
|
Entered: June 17, 2021

Appeal, by permission of a Justice of the Appellate Division of the Supreme Court in the Fourth Judicial Department, from an order of the Monroe County Court (Christopher S. Ciaccio, J.), dated May 11, 2018. The order denied the motion of defendant to vacate a judgment of conviction pursuant to CPL 440.10.

**Attorneys and Law Firms**

TIMOTHY P. DONAHER, PUBLIC DEFENDER, ROCHESTER (DREW R. DUBRIN OF COUNSEL), FOR DEFENDANT-APPELLANT.

SANDRA DOORLEY, DISTRICT ATTORNEY, ROCHESTER (LEAH R. MERVINE OF COUNSEL), FOR RESPONDENT.
PRESENT: PERADOTTO, J.P., CARNI, LINDLEY, CURRAN, AND BANNISTER, JJ.

MEMORANDUM AND ORDER

**\*1601** It is hereby ORDERED that the order so appealed from is unanimously reversed on the law and the matter is remitted to Monroe County Court for a hearing pursuant to CPL 440.30 (5) in accordance with the following memorandum: Defendant appeals, by permission of this Court, from an order that denied his CPL 440.10 motion to vacate the judgment convicting him, following a jury trial, of gang assault in the first degree (Penal Law § 120.07).

We previously affirmed that judgment of conviction upon remittitur from the Court of Appeals (*People v. Mack*, 142 A.D.3d 755, 36 N.Y.S.3d 538 [4th Dept. 2016]).

We agree with defendant that County Court erred in limiting the scope of the hearing regarding his claim of ineffective assistance of counsel to only those alleged errors of defense counsel that could not have been raised on direct appeal (*cf.* CPL 440.10 [2] [a], [b]). A "claim of ineffective assistance of counsel constitutes a single ground or issue upon which relief is requested ... [Such] a claim ... 'is ultimately concerned with the fairness of the process as a whole'" (*People v. Maxwell*, 89 A.D.3d 1108, 1109, 933 N.Y.S.2d 386 [2d Dept. 2011], quoting *People v. Benevento*, 91 N.Y.2d 708, 714, 674 N.Y.S.2d 629, 697 N.E.2d 584 [1998]) and must be " 'viewed in totality' " (*Benevento*, 91 N.Y.2d at 712, 674 N.Y.S.2d 629, 697 N.E.2d 584). Although "[a] single error may qualify as ineffective assistance ... when the error is sufficiently egregious and prejudicial as to compromise a defendant's right to a fair trial" (*People v. Caban*, 5 N.Y.3d 143, 152, 800 N.Y.S.2d 70, 833 N.E.2d 213 [2005]), a defendant may also establish that he or she received ineffective assistance of counsel by arguing that the cumulative effect of multiple errors rendered defense counsel's performance ineffective, even if those errors, "considered separately, may not have constituted ineffective assistance" ( **\*1602** *People v. Lindo*, 167 A.D.2d 558, 559, 562 N.Y.S.2d 229 [2d Dept. 1990]; *see generally People v. Barnes*, 156 A.D.3d 1417, 1420, 67 N.Y.S.3d 373 [4th Dept. 2017], *lv denied* 31 N.Y.3d 1078, 79 N.Y.S.3d 99, 103 N.E.3d 1246 [2018]). Where, as here, a defendant alleges errors of defense counsel based on both matters appearing in the record and matters dehors the record, i.e., a " 'mixed claim,' " a "CPL 440.10 proceeding is the appropriate forum for reviewing the claim of ineffectiveness *in its entirety*" (*Maxwell*, 89 A.D.3d at 1109, 933 N.Y.S.2d 386 [emphasis added]; *see* **\*\*918** *People v. Wilson* [Appeal No. 2], 162 A.D.3d 1591, 1592, 78 N.Y.S.3d 819 [4th Dept. 2018]). "That is because each alleged shortcoming or failure by defense counsel should not be viewed as a separate ground or issue raised upon the motion ... Rather, a defendant's claim of ineffective assistance of counsel constitutes a single ground or issue upon which relief is requested ... In other words, such a claim constitutes a single, unified claim that must be assessed in totality" (*Wilson*, 162 A.D.3d at 1592, 78 N.Y.S.3d 819 [internal quotation marks omitted]). We thus conclude that the court erred in limiting the scope of the hearing on defendant's claim of ineffective assistance of counsel, and we reverse the order and remit the matter

People v. Mack, 195 A.D.3d 1601 (2021)
145 N.Y.S.3d 917, 2021 N.Y. Slip Op. 03982

to County Court for a hearing on defendant's respective claims of ineffective assistance of counsel in their entirety.

We have reviewed the other contentions raised by defendant and conclude that they are without merit.

## All Citations

195 A.D.3d 1601, 145 N.Y.S.3d 917 (Mem), 2021 N.Y. Slip Op. 03982

End of Document    © 2024 Thomson Reuters. No claim to original U.S. Government Works.

Terrance L. Mack, Petitioner, v Julie Wolcott, Superintendent.
Petition Under 28 U.S.C. § 2254 for a Writ of Habeas Corpus
Attachments

Item 16 (continued):

This was not a second petition, application, or motion. Instead, it was a second proceeding on the original CPL 440 motion. The Appellate Division had reversed and remitted the matter for an expanded hearing on Mr. Mack's multiple claims of ineffective assistance of counsel.

Even after the expanded hearing, however, the County Court (Dollinger, J.), denied the CPL 440 motion.

Decision (dated 01/25/2023 and served 01/30/2023) attached.

0

STATE OF NEW YORK
COUNTY COURT                    COUNTY OF MONROE

---

THE PEOPLE OF THE STATE OF NEW YORK,

                    -vs-                          Ind. No.: 2008-0921B

TERRANCE L. MACK,

                    Defendant.

---

APPEARANCES:

*For the People:*      SANDRA DOORLEY, Esq.
                       Monroe County District Attorney
                       Martin P. McCarthy, Esq.
                       Assistant District Attorney
                       47 South Fitzhugh Street
                       Rochester New York 14614

*For the Defendant:*   JULIE CIANCA, Esq.
                       Monroe County Public Defender
                       David R. Jeurgens, Esq.
                       Assistant Public Defender
                       10 North Fitzhugh Street
                       Rochester, New York 14614

<u>DECISION AND ORDER</u>

DOLLINGER, J.

By Notice of Motion dated January 13, 2017, defendant moved pursuant to CPL § 440.10[1][h] to vacate his conviction, after a jury trial, of gang assault in the first degree. After oral argument and a hearing, defendant's motion was denied by Decision and Order dated May 11, 2018 (J. Ciaccio). On appeal, the Appellate Division reversed the order because the hearing judge improperly "limited the scope of the hearing on defendant's claim of ineffective assistance of counsel to only those alleged errors of defense counsel that could not have been raised on

direct appeal" (*People v Mack*, 195 AD3d 1601, 1601 [4th Dept 2021]). The Appellate Division "remit[ted] the matter to County Court for a hearing on the defendant's respective claims of ineffective assistance of counsel in their entirety" (*Id.* at 1602). The Appellate Division affirmed County Court's finding that all of defendant's remaining contentions in his CPL 440 motion were without merit.

Procedural Background

Defendant was convicted following a jury trial in Monroe County Court (Geraci, J.) of gang assault in the first degree, for his role in the killing of Latasha Shaw. He was sentenced to a determinate term of 25 years followed by 5 years of post-release supervision. The Appellate Division reversed the conviction, holding that a jury note issue constituted a mode of proceedings error (*People v Mack*, 117 AD3d 1450 [4th Dept 2014]). The Court of Appeals reversed finding that the jury note issue did not constitute a mode of proceedings error (*People v. Mack*, 27 NY3d 534, 539 [2016]) and remanded the case "for consideration of the facts and issues not determined on the [initial] appeal" (*Id.* At 544). On remittal, the Fourth Department declined to review the defendant's unpreserved contentions and held that the jury's verdict was supported by sufficient evidence (*People v Mack*, 142 Ad3d 755, 760 [4th Dept 2016]). Defendant's application to reargue before the Court of Appeals was denied and his direct appellate rights are therefore exhausted (*People v Mack*, 28 NY3d 944 [2016]).

Instant Motion

Defendant alleges that he received ineffective assistance of trial for multiple reasons, including, but not limited to: (i) unnecessary and premature discovery relating to written statements obtained by defense counsel's investigator; (ii) inadequate preparation for trial related to inconsistent statements that were used to impeach four alibi witnesses; (iii) failure to call an

expert witness on identification; (iv) errors related to the admission of a photo array, written notes on the array, and alleged bolstering regarding the identification; (v) failure to elicit the timing of the defendant's report of alleged alibi; (vi) failure to elicit discrepancies between the description that eyewitness originally gave and the defendant; (vii) not objecting to hearsay statement regarding a statement made to the eyewitness by her father; (viii) not cross-examining a prosecution witness, Ronaldo Donald, regarding the facts of a youthful offender adjudication; (ix) not moving to strike or asking for a curative instruction when a witness referred to a polygraph test; (x) not eliciting facts regarding details surrounding his arrest; (xi) not eliciting the timing of sunset in Rochester, New York on September 29, 2007; (xii) an ineffective closing statement; (xiii) not requesting that the jury clarify a note; (xiv) not requesting the jury be polled to have each of them expressly revoke their prior unanswered requests; (xv) not calling all of the potential alibi witnesses; (xvi) not objecting to the testimony of investigator Samuel Soprano for lack of notice of an alibi rebuttal witness, and other claims within the motion (*Attorney Affirmation*, p 55-72).

This Court conducted a hearing on February 18, 2022, and April 22, 2022. Prior to the hearing, defendant submitted the Appellate Division Appendix, and the transcript of the CPL § 440.10 hearing conducted by Judge Ciaccio from November 20-21, 2017, which includes the hearing testimony of Paul Vacca, Jr., Esq., Christopher T. White, Sonia Spaight, Bessie Mack, Geoffrey Resnick and Terrance Mack.

At the hearing, defendant called his trial lawyer, Paul Vacca Jr., Esq., and Charles Brainerd, Ph.D. The Court received into evidence the Mr. Vacca's voucher (Exhibit D), police reports (Exhibits E, H and P), transcript of Megan Torres's 911 call (Exhibit F), photo array (Exhibit G), discovery letter (Exhibit I), interview form (Exhibit J), prisoner data report (Exhibit

K), jury notes (Exhibit L – 5 pages), trial transcript (Exhibit M), alibi letter of Jessica Smith (Exhibit N), defense investigator's correspondence (Exhibit O), photographs of the scene (Exhibit Q, R, S, T, U, V, W), the 911 call by a witness that identified the defendant (Exhibit X), and a curriculum vitae for Dr. Chares J. Brainerd (Exhibit Y).

At the conclusion of the hearing, the Court reserved decision. Following the hearing, the Court received: (i) a Memorandum in Support of CPL 440.10 motion; (ii) a Post-Hearing Memorandum in Opposition to CPL § 440.10 motion; (iii) a Reply Memorandum in Support of CPL 440.10 motion; and (iv) an email from defense counsel with an additional case citation in support of his ineffective assistance of counsel claims.

What follows are the findings of fact and conclusions of law based on the credible testimony and evidence presented.

Findings of Fact

This Court, upon review of the minutes of the hearing that preceded remittal, affirms and incorporates by reference the findings of fact made by Judge Ciaccio in his decision dated May 11, 2018.

Mr. Vacca was assigned by the Monroe County Conflict Defender's office to represent the defendant. Mr. Vacca has been practicing criminal law since his admission to the bar in 1977. Vacca conducted approximately 150 felony jury trials prior to defendant's trial. Mr. Vacca's voucher reflects that he billed 243.75 hours of work on this case. He estimates that approximately twenty-five percent of the hours that he worked on this matter, he did not bill on his voucher.

Mr. Vacca met with defendant before arraignment and learned of his alibi defense. Vacca immediately retained the services of Geoffrey Resnick, a private investigator. Mr. Vacca and Mr. Resnick had a long working relationship prior to defendant's case. Vacca assigned Resnick

to interview alibi witnesses. Mr. Resnick interviewed several witnesses and created a list of potential alibi witnesses. Mr. Resnick produced six reports detailing his interviews and attempts to locate various alibi witnesses. Mr. Vacca filed two alibi notices that named 18 potential witnesses.

After Mr. Resnick's investigation, Mr. Vacca made extensive efforts to locate and interview the alibi witnesses. His stated objective was to evaluate the witnesses' credibility and ability to recall the events of September 29, 2007. Vacca wanted to call the witnesses who he believed would be most credible and therefore most effective in establishing the alibi defense.

Two witnesses on the list, Christopher White and James Jenkins, were incarcerated at the time of trial. Mr. Vacca consulted with defendant and Mr. Resnick and decided not to interview either witness. It was Mr. Vacca's opinion that it might have a prejudicial effect on the jury to have two incarcerated witnesses testify on the defendant's behalf. Mr. Vacca was also concerned that calling witnesses that he considered highly prejudicial would be detrimental to defendant's alibi defense.

Two of the other named alibi witnesses, Ms. Bessie Mack and Ms. Sonia Spaight, are aunts to the defendant by marriage. They were together at 310 Driving Park on September 29, 2007, when Latasha Shaw was murdered. Both claim that the defendant was not at 310 Driving Park on September 29, 2007. They both claim to have witnessed the attack on Ms. Shaw and the aftermath of the attack from the vantage point of the front porch of 310 Driving Park. Both were also present when the police responded.

Ms. Mack was transported to the police department and interviewed. Mr. Resnick interviewed Ms. Mack during his investigation into alibi witnesses. Ms. Mack was not called to

testify at trial. Ms. Spaight was also interviewed by Mr. Resnick and provided a written statement. She was subpoenaed for trial but not called to testify.

At trial, the People relied upon the identification of a single eyewitness, Megan Torres.

Dr. Charles Brainerd is a professor of psychology at Cornell University and has a Ph.D. in Experimental and Developmental Psychology with a specialty in human memory and cognition. Dr. Brainerd testified regarding the science of memory and a number of factors that go into eyewitness identification including instructions, confidence rating, information provided to witnesses, false memories, dual task deficit, estimator variables, system variables, lighting, distance, viewing angle, partial disguise, event stress, event duration, own race bias, retention interval, forgetting curve, confidence vs accuracy, unconscious transference, and numerous other factors. Dr. Brainerd also set forth that research shows that an average person has an over-confidence in eyewitness identification. Dr. Brainerd also pointed to the lack of detailed description of the defendant by Ms. Torres prior to her identification of the defendant in the photo array. Dr. Brainerd has not previously been qualified as an expert in New York State but has been qualified as an expert in other courts.

## Conclusions of Law

Defendant argues that Mr. Vacca's representation was constitutionally ineffective and deprived him of his right to effective assistance of counsel (US Const, 6ᵗʰ Amend, NY Const, Art 1, § 6). The burden is on the defendant to "demonstrate the absence of strategic or other legitimate explanations for counsel's alleged failure" (*People v Pavone*, 26 NY3d 629, 646 [2015]; *see People v Barboni*, 21 N.Y.3d 393, 405-406 [2013]). "Absent such a showing, it will be presumed that counsel acted in a competent manner and exercised professional judgment" (*People v Rivera*, 71 N.Y.2d 705, 709 [1988]). The New York State Constitution, which provides

greater protection than its federal counterpart, is satisfied when "the evidence, the law, and the circumstances of a particular case, viewed in totality and as of the time of the representation, reveal that the attorney provided meaningful representation" (*People v Baldi*, 54 NY2d 137, 147 [1981]; *see People v Benevento*, 91 NY2d 708, 712 [1998]).

It is clear that the defendant's "right to representation does entitle him to have counsel conduct appropriate investigations, both factual and legal, to determine if matters of defense can be developed, and to allow himself time for reflection and preparation for trial" (*People v Bennett*, 29 NY2d 462, 466 [1972]; quoting *Coles v Peyton*, 389 F2d 224, 226 [4th Cir 1968]). However, "a reviewing court must be careful not to 'second-guess' counsel, or assess counsel's performance 'with the clarity of hindsight,' effectively substituting its own judgment of the best approach to a given case" (*Pavone* at 647; quoting *Benevento* at 712). "The test is 'reasonable competence, not perfect representation'" (*Pavone* at 647). Courts reviewing such claims must be careful not to "confuse true ineffectiveness with mere losing tactics and according undue significance to retrospective analysis" (*Benevento* at 712).

In defendant's Memorandum in support of his CPL § 440.10 motion he argues that Mr. Vacca was ineffective for the following reasons: (1) he failed to investigate Christopher White as an alibi witness; and/or (2) he failed to call Bessie Mack, Jerome Walker or Sania Spaight to testify; and/or (3) he failed to consult with an expert on eyewitness identification; and/or (4) he opened the door to inadmissible photo-array evidence; and/or (5) ineffective cross examination; and/or (6) he failed to abject to testimony from rebuttal witness Samuel Soprano; and/or (7) he presented an ineffective closing argument; and/or (8) miscellaneous failures.

<u>Christopher White</u>

Mr. Vacca conducted an extensive pre-trial investigation. He immediately retained the services an experienced investigator and assigned him to locate and interview potential alibi witnesses. Mr. Vacca followed up with his own interviews of potential alibi witnesses. He even traveled to Elmira to interview a number of potential alibi witnesses. Mr. Vacca interviewed the witnesses to evaluate their ability to recall events and test their credibility. Mr. Vacca, Mr. Resnick and the defendant discussed which witnesses were credible and whose testimony would provide the best chance of acquittal. Mr. Vacca concluded that some of the potential alibi witnesses were more likely to contradict other alibi witnesses than to give beneficial testimony.

Mr. Vacca called the five alibi witnesses that he believed gave his trial strategy the best chance of succeeding. The alibi witnesses that were called all testified in support of his defense strategy. The decision not to call Christopher White was part of a legitimate, albeit unsuccessful, trial strategy.

Mr. Vacca's decision not to call Mr. White is vindicated by the manner in which Mr. White's testified at the original CPL 440 hearing. Judge Ciaccio had an opportunity to observe Mr. White and evaluate his credibility as it relates to his recollection of the events of September 29, 2007. Ciaccio "found his [Mr. White's] testimony incredible" and found "it likely that the jury would have also". (Decision and Order May 11, 2018, pg 7)

Bessie Mack, Jerome Walker and Sonia Spaight

The same logic and conclusions relevant to Mr. Vacca's decision not to call Mr. White apply to Mr. Vacca's decision not to call Sonia Spaight, Bessie Mack, and Jerome Walker. Those decisions were made by Mr. Vacca, an experienced criminal defense attorney, after weighing the potential benefit of their testimony in the context of his theory of the case. The record reflects that these decisions were strategic, albeit unsuccessful decisions.

Mr. Vacca called a total of five (5) alibi witnesses at trial. He called the alibi witnesses that he believed were the most credible and would be most helpful in his effort to establish that defendant was not at the scene of the crime rather, defendant was in Elmira, New York when Latasha Shaw was murdered. Defense counsel's "decision to not call a witness, whose testimony he assessed as weak, [i]s a strategic legal decision which does not amount to ineffective assistance of counsel" (*People v Smith*, 82 NY2d 731, 733 [1993]).

Defendant has failed to demonstrate the absence of strategic explanations for Mr. Vacca's decision not to call Christopher White and other alibi witnesses.

<u>Expert Witness on Eyewitness Identification</u>

Defendant argues that Mr. Vacca was ineffective for not consulting with or calling an expert witness at trial. Dr. Brainerd testified to demonstrate the benefits of consulting with or calling an identification expert to cast further doubt on Ms. Torres's identification of the defendant. However, several the factors addressed by Dr. Brainerd, such as distance and lighting, viewing angle, event stress and other factors were directly addressed by Mr. Vacca in his cross-examination of Ms. Torres. Mr. Vacca chose a trial strategy that focused on the defendant's alibi and Ms. Torres's identification being mistaken.

Any value that an expert may have had is tempered by the fact that the identification in this case was confirmatory. The identifying eyewitness had seen the defendant "in the neighborhood quite a few times on the brown porch" and had also seen him earlier that day on the same porch. The confirmatory identification was corroborated by the confession by the defendant to the jailhouse cooperator and by a jail call made by the defendant to his father in which he made an implicit confession.

While a different strategy might have been more effective, this Court cannot conclude that such strategy was unreasonable in the context of the defendant's overall trial strategy. Overall, it "is not for the court to second-guess whether a course chosen by defense's counsel was the best trial strategy, or even a good one, so as defendant was afforded meaningful assistance of representation" (*People v Howie*, 149 AD3d 1497, 1500 [4th Dept 2017]).

"Inadmissible" Photo-Array Evidence

Defendant alleges that defense counsel was ineffective for "opening the door" by questioning the eyewitness, Megan Torres, on cross examination about the photo array identification of the defendant. However, this "opening the door" allowed the defense an opportunity to question Investigator Penkitis about other eyewitnesses to the attack that he showed photo arrays containing the defendant's photo, all of whom were unable to make an identification.

Eliciting these non-identifications supported defense counsel's theory of the case that the identification was inaccurate or mistaken, and defendant was not in Rochester at the time of the killing. The testimony of all the non-identifications bolstered Mr. Vacca's attempt to discredit the photo array identification by Ms. Torres by suggesting that her father pressured her to make an identification.

Ineffective Cross Examination

Defendant argues that Mr. Vacca was ineffective for not sufficiently exposing other discrepancies, such as the height and weight differences between the eyewitness's original statement in the 911 call and her later identification of the defendant. However, Mr. Vacca cross-examined Ms. Torres regarding her belated disclosure and tried to cast the identification as a wrongful identification, consistent with his trial strategy. He challenged whether her

identification was mistaken, confronted her with the fact that she did not identify the defendant at the first opportunity, suggested that the identification was borne out of sympathy for the victim's family, implied that the victim identified the defendant under pressure from her father to "do the right thing", and pointed out inconsistencies in her testimony to discredit her identification of the defendant.

While his questioning may not have been perfect and another strategy might have yielded a better result, Mr. Vacca's cross-examination was consistent with, and in furtherance of, the overall trial strategy.

Rebuttal Witness

Defendant alleges that Mr. Vacca was ineffective for failing to make a meritorious objection to the People's rebuttal alibi witness. However, defendant's argument that a meritorious objection would have resulted in preclusion of the rebuttal alibi witness is speculative.

Assuming that there was a timely objection, upon a showing of good cause, it was in the trial Court's discretion to: (1) overrule the objection; or (2) grant an adjournment; or (3) preclude the People's alibi rebuttal witness, Investigator Soprano, from testifying (CPL §§ 250.20[4]). An objection by the defense, if not summarily overruled, seems as likely to have resulted in an adjournment as preclusion. The adjournment is a relatively minor remedy that would not have been advantageous to defendant considering his theory of the case. The fact that Mr. Vacca failed to object to the testimony of the rebuttal alibi witness does very little to advance defendant's argument that Mr. Vacca was ineffective.

Closing Argument

Defendant argues that Mr. Vacca's closing statement amounted to ineffective assistance of counsel. While ultimately unsuccessful, Mr. Vacca's closing statement, consistent with his trial strategy, sought to discredit Ms. Torres's identification by highlighting the outside influences on her testimony including her father's pressure and previous viewings of the defendant prior to the photo array identification. This strategy is also consistent with many of Dr. Brainerd's recommendations to discredit the identification. Apparently cognizant that this is not his strongest argument, defendant concedes that Vacca's closing "Standing alone . . . may fall into the category of unsuccessful, but-not-ineffective trial strategy" (Defendant Memorandum of Law, pg. 80).

Miscellaneous Failures

Defendant alleges that trial counsel's preparation for trial was inadequate, and thus he was ineffective. He argues that: (1) the alibi witnesses were not sufficiently prepared for trial; (2) counsel failed to elicit the timing of sunset on September 29, 2007; (3) counsel did not object to the mention of a polygraph test; (4) counsel did not cross examine Ronaldo Donald on a misdemeanor youthful offender adjudication; and (5) counsel did not obtain defendant's cell phone records. Defendant, with the benefit of 13 years of hindsight and virtually unlimited time to dissect a cold record, asserts that trial counsel could or should have made other decisions.

Defendant's argument that the alibi witnesses were not prepared is belied by the record which makes clear that Mr. Vacca spent a great deal of time searching out alibi witnesses, meeting with them, talking to them about the case, and preparing them for trial.

The timing of sunset and twilight end on September 29, 2007, stipulated at the hearing to have been at 6:56 p.m., and 7:24 p.m. respectively, is certainly a factor that the jury could consider in evaluating Ms. Torres's ability to accurately identify the defendant. However, Mr.

Vacca dedicated a portion of his cross examination to discrediting the identification in support of his alibi defense.

Defendant argues that Mr. Vacca was ineffective for failing to cross examine Ronaldo Donald, the jailhouse informant, about a misdemeanor youthful offender adjudication and subsequent felony conviction for a knifepoint robbery. This cross examination would have been minimally probative and unlikely to discredit the informant. Mr. Vacca could properly have considered that the jury was aware that Mr. Donald was in jail because of prior criminal conduct when he purportedly heard the jailhouse confession of the defendant. There are also strategic reasons that Mr. Vacca could have chosen not to cross examine Mr. Donald on his previous convictions. Mr. Vacca could justifiably have not wanted to give Mr. Donald an opportunity to deny or explain his prior criminal conduct. Instead, Mr. Vacca made a strategic decision to ask other questions meant to discredit Ronaldo Donald's testimony.

Defendant argues that the disclosure of the alibi material, including statements of the alibi witnesses, which was disclosed to prosecutors well in advance of trial was error. Defendant alleges that this material was turned over with no legitimate purpose behind its production. However, there is evidence in the pre-trial transcript that the material was turned over in attempt to avoid charges and seek a reduction of bail, both legitimate strategic considerations that do not constitute ineffective assistance (*see generally People v. Rivera*, 71 NY2d 705, 709 [1988]).

Defendant argues that Mr. Vacca was ineffective for failing to subpoena and obtain the defendant's cell phone records. This argument is also belied by the record which reveals that the defendant was using multiple cell phones at the time of Ms. Shaw's killing and he was unsure of which cell phone he was using at the time. It would therefore have been impossible for Mr. Vacca to subpoena the cell phone records for a phone that he could not identify. Defendant's

argument also must fail because it is speculative. Defendant improperly assumes that the cell phone records would support his alibi defense. If the cell phone records showed that the defendant's cell phone was present in the area of Dewey and Driving Park, it would have been devastating to his alibi defense.

Defendant alleges that Mr. Vacca should have elicited testimony regarding the circumstances of defendant's arrest and the timing of his reported alibi. A significant portion of this would not have been admissible and to the extent that it was admissible. Defendant has failed demonstrate that this failure was prejudicial to his alibi defense.

Defendant argues that Mr. Vacca was ineffective in his handling of unaddressed jury notes. He alleges that defense counsel was ineffective for not objecting to the Court taking the verdict without requesting clarification from the jury, and then not polling the jury on that issue. This issue has been the subject of extensive appellate review. As the Court of Appeals held, "the defense may have made a strategic decision not to challenge the trial court's procedure. Counsel, who was aware the jury's last note before the recess declared a deadlock, may have decided that jurors were more likely to acquit defendant if they were not given the chance to deliberate further. In such situations, if the alleged error is deemed to be a mode of proceedings error, 'it would be unwise for counsel to object and seek correction of the error'" (*People v Mack*, 27 NY3d 534, 543-544 [2016]). As the Court of Appeals points out, defense counsel had reasonable grounds to not try to further deliberations and, to the extent that counsel was aware of the recent case law at the time, it might be considered unwise to object to clear up the record. Thus, the defendant's claim of ineffective assistance of counsel on this ground must fail.

<u>Conclusion</u>

Defendant's motion to vacate his conviction due to ineffective assistance of counsel must be denied. Considering all of the alleged errors, individually and collectively, defendant has failed to demonstrate that Mr. Vacca's representation fell below an objective standard of reasonableness and it is evident to this Court that "the evidence, the law, and the circumstances of [this] particular case, viewed in totality and as of the time of the representation, reveal that [Mr. Vacca] provided meaningful representation" (*People v Baldi*, 54 NY2d 137, 147 [1981]; *see People v Benevento*, 91 NY2d 708, 712 [1998]).

Defendant's motion to vacate judgment is hereby DENIED.

This constitutes the Decision and Order of the Court.

January 25, 2023
Rochester, New York

**HON. MICHAEL L. DOLLINGER**
**MONROE COUNTY COURT JUDGE**

Terrance L. Mack, Petitioner, v Julie Wolcott, Superintendent.
Petition Under 28 U.S.C. § 2254 for a Writ of Habeas Corpus
Attachments

Item 18

On April 25, 2023, Hon. Stephen K. Lindley denied Mr. Mack's motion for leave to appeal to the Appellate Division, Fourth Department.

Order attached.

## SUPREME COURT OF THE STATE OF NEW YORK
### Appellate Division, Fourth Judicial Department

---

KA 23-00365


THE PEOPLE OF THE STATE OF NEW YORK, RESPONDENT,

V

TERRANCE L. MACK, DEFENDANT.


Indictment No.: 2008-0921B

---

Defendant having moved for a certificate granting leave to appeal pursuant to CPL 460.15 from an order of the Monroe County Court dated January 25, 2023,

Now, upon reading and filing the papers with respect to the motion, and due deliberation having been had thereon,

It is hereby ORDERED that the motion is denied.


DATED: 4-25-23


_____
Hon. Stephen K. Lindley
Associate Justice

# 𝔖upreme 𝔠ourt

**APPELLATE DIVISION**
**Fourth Judicial Department**
**Clerk's Office, Rochester, N.Y.**

}

*I,* **ANN DILLON FLYNN**, *Clerk of the Appellate Division of the Supreme Court in the Fourth Judicial Department, do hereby certify that this is a true copy of the original document, now on file in this office.*



***IN WITNESS HEREOF***, *I have hereunto set my hand and affixed the seal of said Court at the City of Rochester, New York, this* **APR 2 6 2023**

_____
**Clerk**

Terrance L. Mack, Petitioner, v Julie Wolcott, Superintendent.
Petition Under 28 U.S.C. § 2254 for a Writ of Habeas Corpus
Attachments

Item 22:

The numerous, unprofessional blunders by Mr. Mack's assigned counsel (Paul J. Vacca, Esq.) prejudicially denied Mr. Mack of his Federal Constitutional rights to the effective assistance of counsel and a fair trial under 28 U.S.C. § 2254.

Twenty-four, individual grounds for a finding of ineffective assistance of counsel (IAC) are set below.

Mr. Mack specifically incorporates by reference and makes part of this petition a "Memorandum and Legal Authority in Support of Petition for Writ of Habeas Corpus," prepared by David R. Juergens, Esq. and submitted in support of Mr. Mack's *pro se* petition and his motion for the assignment of counsel to assist him going forward. The Memorandum contains citations to the state court record to support all factual allegations and arguments.

Item 22 (A)

Ground 1    Counsel failed to investigate the key alibi witness (Christopher Travis White).

Facts:
Two months before trial, counsel knew the location of Mr. White (Lakeview shock camp). Counsel listed Mr. White in the Notice of Alibi as a potential witness.

At trial, both Mr. Mack and defense witness Precious Scott testified that Mr. Mack was with Mr. White in Elmira on the date of the Rochester gang assault.

After trial, Mr. Vacca filed a motion to set aside the guilty verdict, correctly stating that Mr. White was an indispensable alibi witness but erroneously claiming that Mr. White could not be located before the trial.

At a CPL 440 hearing, Mr. Vacca testified that he "forgot" that Mr. White had been located. The original Monroe County Court (Ciaccio, J.) correctly determined that Mr. Vacca's failure to interview Mr. White was

Terrance L. Mack, Petitioner, v Julie Wolcott, Superintendent.
Petition Under 28 U.S.C. § 2254 for a Writ of Habeas Corpus
Attachments

constitutionally deficient performance but incorrectly determined that Mr. Mack did not suffer prejudice.

Item 22 (B)

Ground 2    Counsel failed to call three witnesses who would have supported the alibi defense (Bessie Mack, Jerome Walker, and Sonia Spaight).

Facts:

Counsel listed these *three* witnesses in Mr. Mack's Notice of Alibi. They gave statements to the defense investigator. Consistent with Mr. Mack's defense, they would have testified at trial that Mr. Mack was not at 310 Driving Park on the crime date. The prosecution's theory was that the "gang" that attacked the victim came from the front porch of 310 Driving Park. These older witnesses would have supported the trial testimony of three younger defense witnesses who testified that Mr. Mack was not at the Rochester crime scene.

At trial, the court read the names of potential witnesses, including Bessie Mack, Jerome Walker, and Sonia Spaight. But counsel rested without calling any of these witnesses.

At a CPL 440 hearing, Mr. Vacca testified that he picked the "best" witnesses but he could not provide any reason for not calling these witnesses other than to suggest that his failure to call Mr. Walker may have been because he was in jail. Mr. Walker died before the hearing. However, both Bessie Mack and Sonia Spaight testified that Mr. Vacca never spoke with them about testifying despite their willingness to do so.

In addition, testimony from Bessie Mack and Jerome Walker would have been non-cumulative to the three younger defense witnesses. Ms. Mack and Mr. Walker were both lived at 310 Driving Park and were home all day. Accordingly, they would have been the only Rochester witnesses who could have rebutted testimony from the People's single eyewitness that Terrance Mack was on the porch of 310 Driving Park around noon on the day of the crime. The gang assault occurred at 7:30 p.m.

Terrance L. Mack, Petitioner, v Julie Wolcott, Superintendent.
Petition Under 28 U.S.C. § 2254 for a Writ of Habeas Corpus
Attachments

Without any specific explanation, Mr. Vacca failed to call three witnesses who were ready, willing, and able to testify at the trial in support of Mr. Mack's mistaken identification and alibi defense. This failure was constitutionally deficient performance that prejudiced Mr. Mack.

Item 22 (C)

Ground 3     Counsel failed to consult with, or call, an expert on the science of memory and perception, or otherwise become familiar with the science as it relates to eyewitness identification.

Facts:

In a case where no physical, forensic, video, or cell phone evidence placed Terrance Mack anywhere near the crime scene and the defense was mistaken identification and alibi, a competent attorney would research the law and the science on eyewitness identification and learn about the many reliability factors that can lead to mistaken identification.

At the CPL 440 hearing, Mr. Vacca testified that, in his career as a lawyer, he has never consulted with an expert on memory and perception in an effort to prepare a challenge to eyewitness identification. Mr. Vacca demonstrated his stunning lack of knowledge in this area by his inability to describe common reliability factors that were well-established by scientific studies and well-known to courts and competent attorneys in 2009 (when Mr. Mack went to trial).

This general ground for finding constitutionally deficient performance that caused prejudice to Mr. Mack is supported by several specific grounds listed below (*see* Grounds 4 through 11).

Item 22 (D)

Ground 4     Counsel failed to educate the jurors about the danger of misidentification posed by cross-racial identification ("own race bias").

Terrance L. Mack, Petitioner, v Julie Wolcott, Superintendent.
Petition Under 28 U.S.C. § 2254 for a Writ of Habeas Corpus
Attachments

Facts:

Terrance Mack is a black male. The single eyewitness (Megan Torres) is a white female. Despite scientific studies and case law before Mr. Mack's 2009 trial, recommending that courts warn jurors about the dangers of cross-racial identification, Mr. Vacca never requested the trial court to provide the jurors with such an instruction. Nor did he consult with or call an expert to educate jurors on the existence of "own race" bias and how that factor could reduce the reliability of eyewitness identification.

Item 22 (E)

Ground 5    Counsel failed to educate the jurors about the danger of misidentification posed by "weapon focus."

Facts:

This gang assault involved multiple weapons (knives, bottles, sticks, bats, broomstick handles, etc.) that could have caused the single eyewitness to spend a good amount of time looking at the weapons rather than the perpetrator's face. This focus on weapons, rather than faces, reduces the accuracy of eyewitness identification. In 2009, this factor ("weapon focus") was well-known to courts and well-established by scientific studies. Yet, Mr. Vacca never educated the trial jurors about this reliability factor because he himself did not know what it was.

Item 22 (F)

Ground 6    Counsel failed to educate jurors about the lack of correlation between witness confidence and witness accuracy.

Facts:

The prosecution's single eyewitness expressed great confidence in her identification of Mr. Mack. But scientific studies before 2009 had established the lack of a strong correlation between confidence and accuracy. An expert on memory and perception could have educated jurors on the many reasons why witnesses may become more confident over the course of time even though their memories are degrading and their confidence should wan. Mr. Vacca was ineffective because he failed

Terrance L. Mack, Petitioner, v Julie Wolcott, Superintendent.
Petition Under 28 U.S.C. § 2254 for a Writ of Habeas Corpus
Attachments

to learn the science and the case law on this topic. Mr. Vacca's failure to consult with or call an expert and/or to request a jury instruction was deficient performance that prejudiced Mr. Mack.

Item 22 (G)
Ground 7     Counsel failed to educate jurors about the problem of "event stress."

Facts:
This gang assault was a horrific incident, involving multiple weapons and participants, where a mob attacked a smaller group in the middle of an intersection and the victim was stabbed to death. Naturally, the brutal nature of this sudden assault would cause a great deal of stress in onlookers such as the single eyewitness, a teenager named Megan Torres.

Although many laymen believe that stress enhances memory, scientific studies before Mr. Mack's trial established that stress reduces a person's ability to focus and retain information such that it reduces the reliability of eyewitness identification. Mr. Vacca did not educate himself or the jurors on this important reason for finding that the eyewitness in Mr. this case may have been mistaken in her identification of Mr. Mack. By failing to understand and use this reliability factor to Mr. Mack's benefit, Mr. Vacca provided deficient performance that prejudiced Mr. Mack.

Item 22 (H)
Ground 8     Counsel failed to educate jurors about the tendency of witnesses to overestimate time ("event duration").

Facts:
This incident began and ended in a matter of minutes. The single eyewitness gave an estimate of the time she viewed the perpetrator's face that was very likely an overestimate. Most lay jurors do not know that witnesses in general tend to overestimate "event duration." This reliability factor was well-established before Mr. Mack's trial but Mr. Vacca did not educate the jurors about it because he did not know about

Terrance L. Mack, Petitioner, v Julie Wolcott, Superintendent.
Petition Under 28 U.S.C. § 2254 for a Writ of Habeas Corpus
Attachments

it. Mr. Vacca's failure to employ this reliability factor to Mr. Mack's benefit was deficient performance that prejudiced him.

Item 22 (I)
Ground 9    Counsel failed to educate jurors about the problem of "partial disguise."

Facts:
The single eyewitness claimed that the perpetrator wore a baseball cap. Mr. Vacca never argued to the jurors that wearing a hat is a circumstance that would diminish the reliability of her identification. An expert could have educate Mr. Vacca and the jurors about scientific studies that establish how "partial disguise" tends to reduce the accuracy of eyewitness identification. Mr. Vacca failed to learn about this reliability factor, something well-known before Mr. Mack's trial, and, as a result, caused prejudice to Mr. Mack.

Item 22 (J)
Ground 10    Counsel failed to educate jurors about "facial distinctiveness."

Facts:
The failure of the eyewitness to testify about any distinctive feature of Mr. Mack's face (or any other body part for that matter) should have been brought to the attention of the jurors by Mr. Vacca. Study or consultation with an expert would have educated Mr. Vacca. His failure to learn the law or the science about reliability factors such as "facial distinctiveness" prejudiced Mr. Mack.

Item 22 (K)
Ground 11    Counsel failed to educate jurors about the problem of "unconscious transference."

Facts:
The eyewitness claimed to know Mr. Mack "from the neighborhood." But she did not describe, or corroborate, any prior contact with Mr. Mack

Terrance L. Mack, Petitioner, v Julie Wolcott, Superintendent.
Petition Under 28 U.S.C. § 2254 for a Writ of Habeas Corpus
Attachments

other than claiming that she saw him twice on the porch of 310 Driving Park on the date of the gang assault. She did not know the name of the alleged perpetrator and did not describe any personal interaction with him. Consulting with or calling an expert would have provided Mr. Vacca with explanations for how "unconscious transference" might have caused a mistaken identification.

Item 22 (L)

Ground 12    Counsel failed to object to inadmissible testimony and evidence about a non-blinded, photo-array procedure conducted with the People's single eyewitness.

Facts:

A competent attorney would have known that, in 2009 and even today, any evidence about a non-corporeal photo array identification that was not conducted by a "blinded" procedure was inadmissible in New York. A competent attorney would not have opened the door to inadmissible proof, both testimony about the procedure and receipt into evidence of the unredacted physical exhibit itself, without a legitimate strategy.

Mr. Vacca had no game plan. He stumbled into this fiasco by asking questions that were unnecessary, allowing the People to bolster the identification with inadmissible proof. Most egregious was the receipt of the unredacted photo array exhibit which had the witness's initials ("MT"), a circle around #3 (Terrance Mack's photo), and a handwritten notation, "THAT'S THE GUY."

Mr. Vacca's woeful performance on the photo array evidence alone, may have led to Mr. Mack's conviction.

Item 22 (M)

Ground 13    Counsel asked open-ended questions that prompted the People's single eyewitness to bolster her in-court identification of Mr. Mack with new testimony.

Terrance L. Mack, Petitioner, v Julie Wolcott, Superintendent.
Petition Under 28 U.S.C. § 2254 for a Writ of Habeas Corpus
Attachments

Facts:
For some inexplicable and inexcusable reason, Mr. Vacca asked the single eyewitness how she could identify Mr. Mack in the melee and why she did not come forward sooner.  During their summation, the People's used the witness's answers to bolster her identification testimony.  Mr. Vacca's incompetent performance in this area prejudiced Mr. Mack.

Item 22 (N)
Ground 14    Counsel inadequately addressed the distance, the darkness, and the viewing angle.
Facts:
The single eyewitness had estimated her viewing distance as 100 to 150 feet.  Mr. Vacca was unprepared to contest the lower estimate because he never investigated the actual distance – 158 feet.

The eyewitness and another prosecution witness testified that it was still light out ("dusk") and the People used this testimony during their summation.  A competent attorney would have established that it was unquestionably dark at the time of the incident (7:30 p.m. on 09/29/2007).  Twilight had ended at 7:24 p.m.

Mr. Vacca never argued to the jurors that the identification was less reliable because the single eyewitness would have only had a side view of the perpetrator's face.

These three failures prejudiced Mr. Mack.

Item 22 (O)
Ground 15    Counsel failed to impeach the eyewitness with the content of her 911 call.

Facts:
Ms. Torres called 911 and supposedly "was on the phone with the police while incident was happening.  Mr. Vacca never confronted Ms. Torres with the content of her 911 call, showing that she called 911 only after, not during, the incident.  Ms. Torres also never mentioned any men being

Terrance L. Mack, Petitioner, v Julie Wolcott, Superintendent.
Petition Under 28 U.S.C. § 2254 for a Writ of Habeas Corpus
Attachments

involved in the assault and claimed that she saw the victim stabbed with a broken bottle even though no medical testimony established that type of wound. Mr. Vacca's failure to impeach the single eyewitness with these provable discrepancies caused prejudice to Mr. Mack.

Item 22 (P)
Ground 16   Counsel failed to object to impeachment testimony from the State's unnoticed, alibi rebuttal witness.

Facts:
A competent attorney would know that when the defense files a Notice of Alibi, the People must file a Notice of Rebuttal Alibi at least ten days before trial. Here, the People never filed the required notice. Instead, they waited until trial to ambush an alibi witness with testimony about her alleged, prior oral statement that she called Mr. Mack on a landline telephone and about records for the landline telephone showing no incoming or outgoing calls during the relevant period.

Mr. Vacca had a valid motion to preclude any testimony from the People's alibi-rebuttal witness but, for no legitimate reason, failed to make it. This failure caused prejudice to Mr. Mack.

Item 22 (Q)
Ground 17   Counsel gave an ineffective closing argument because he failed to give the jurors numerous reasons to doubt the accuracy of the identification.

Facts:
This general ground covers many overlapping failures by Mr. Vacca. If properly prepared, Mr. Vacca could have delivered a compelling argument for acquittal. Instead, he simply did not understand most of the reliability factors that the defense expert explained during the CPL 440 hearing. This woeful lack of understanding prevented him from giving the jurors many, many reasons to doubt the accuracy of the single witness's identification testimony. These numerous failures prejudiced Mr. Mack.

Terrance L. Mack, Petitioner, v Julie Wolcott, Superintendent.
Petition Under 28 U.S.C. § 2254 for a Writ of Habeas Corpus
Attachments

Item 22 (R)

Ground 18    Counsel gave an ineffective closing argument because he needlessly required the jurors to adopt his theory that only women were involved in the attack and that all attackers came from a van.

Facts:

Mr. Vacca could have argued that even if one or more attackers were men or came from the porch of 310 Driving Park, Mr. Mack was not one of them. Instead, Mr. Vacca insisted that no men were involved and all of the attackers came from a van. These uncompromising positions may have alienated some jurors. Taking these unnecessary hardline positions was ineffective representation.

Item 22 (S)

Ground 19    Counsel did not elicit how Mr. Mack did not match Ms. Torres' description of the suspect.

Facts:

Any competent attorney would establish for and argue to the jurors that the defendant was taller, older, and heavier than the suspect description. For no legitimate reason, Mr. Vacca did not bother to establish or mention these discrepancies.

Item 22 (T)

Ground 20    Counsel did not ask the jailhouse informant about the facts of the crime underlying his youthful offender adjudication.

Facts:

Any competent attorney would impeach a hostile witness with the witness's prior commission of a felony. For no legitimate reason, Mr. Vacca failed to do so even though, the defense theory was that this witness was a liar who was seeking a reduction of his five-year prison sentence by becoming a last-minute witness against Mr. Mack.

Terrance L. Mack, Petitioner, v Julie Wolcott, Superintendent.
Petition Under 28 U.S.C. § 2254 for a Writ of Habeas Corpus
Attachments

Item 22 (U)
Ground 21    Counsel did not object to the prosecutor's erroneous closing statement about Mr. Mack's relationship to all of the defense witnesses.

Facts:
The prosecutor argued in summation that all of the defense witnesses were blood relatives of Mr. Mack and were testifying falsely to help him. Defense witness Shatora Hampton was not related to Mr. Mack in any way. However, Mr. Vacca never objected to the prosecutor's clear mischaracterization of the evidence.

Item 22 (V)
Ground 22    Counsel never obtained any telephone records.

Facts:
Any competent attorney who intends to present an alibi defense would make sure that telephone records will not torpedo the defense. However, Mr. Vacca never obtained any telephone records.

Item 22 (W)
Ground 23    Counsel never elicited evidence regarding his arrest date and immediate report of an alibi defense.

Facts:
For many reasons, the fact that the police arrested Mr. Mack thirteen months after the crime and that Mr. Mack immediately told them that he was in Elmira, not Rochester, on the crime date should have been established for the jurors. Mr. Vacca did not do so.

Item 22 (X)
Ground 24    Counsel failed to object to the court taking the verdict without addressing the jury's request for instruction on the law and a read-back of testimony.

Terrance L. Mack, Petitioner, v Julie Wolcott, Superintendent.
Petition Under 28 U.S.C. § 2254 for a Writ of Habeas Corpus
Attachments

Facts:

During the post-deadlock deliberation phase of the trial, the jurors wanted the trial court to read the meaning of reasonable doubt and the importance of a single witness in a case versus multiple witnesses. Both instructions were vital to the integrity of the verdict.

Despite Mr. Vacca's tailored testimony at the CPL 440 hearing, he had no legitimate reason for failing to request that the trial court read these two critical instructions to the jurors. It is much more likely that the jurors would have acquitted Mr. Mack or, at a minimum, would have remained deadlocked with these instruction, rather than without them. Accordingly, Mr. Vacca's failure to object to the taking of the verdict without any court response to the outstanding jury notes was constitutionally deficient performance that prejudiced Mr. Mack.

IN THE DISTRICT COURT OF THE UNITED STATES FOR
THE WESTERN DISTRICT OF NEW YORK

| | |
|---|---|
| TERRANCE MACK, | AFFIRMATION OF FILING BY MAIL |
| Petitioner, | FOR A PETITION FOR A WRIT OF |
| -vs- | HABEAS CORPUS |
| | |
| JULIE WOLCOTT, | Case No: |
| Superintendent of Attica Correctional Facility, | |
| Respondent. | |

STATE OF NEW YORK)
COUNTY OF MONROE) ss.:

David R. Juergens, Esq., affirms under penalty of perjury (CPLR 2106) that:

I am an attorney licensed to practice law in New York State and a Special Assistant Public Defender for the Monroe County Public Defender, 10 North Fitzhugh Street, Rochester, New York 14614.

On April _18_, 2024, I filed an original and two copies of Mr. Mack's Petition for a Writ of Habeas Corpus (with attachments) by depositing such items enclosed in a post-paid wrapper in an official depository under the exclusive care and custody of the U.S. Postal Service within New York State, addressed to:

Clerk of the Court
United States District Court
Western District of New York
2 Niagara Square
Buffalo, New York 14202

Affirmed on April _18_, 2024.

_____
David R. Juergens

IN THE DISTRICT COURT OF THE UNITED STATES FOR
THE WESTERN DISTRICT OF NEW YORK

---

TERRANCE MACK,

                   Petitioner,

-vs-

JULIE WOLCOTT,
    Superintendent of Attica Correctional Facility,
                       Respondent.

AFFIRMATION OF FILING BY MAIL
FOR A PETITION FOR A WRIT OF
HABEAS CORPUS

Case No:

---

STATE OF NEW YORK)
COUNTY OF MONROE) ss.:

    David R. Juergens, Esq., affirms under penalty of perjury (CPLR 2106) that:

    I am an attorney licensed to practice law in New York State and a Special Assistant Public Defender for the Monroe County Public Defender, 10 North Fitzhugh Street, Rochester, New York 14614.

    On April 18, 2024, I filed three duplicate originals of Mr. Mack's "Memorandum and Legal Authority in Support of Petition for Writ of Habeas Corpus" by depositing such items enclosed in a post-paid wrapper in an official depository under the exclusive care and custody of the U.S. Postal Service within New York State, addressed to:

> Clerk of the Court
> United States District Court
> Western District of New York
> 2 Niagara Square
> Buffalo, New York 14202

Affirmed on April 18, 2024.

                                       David R. Juergens

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

Terrance Mack

**(b)** County of Residence of First Listed Plaintiff _____
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

Pro Se

## DEFENDANTS

Julie Wolcott

County of Residence of First Listed Defendant _____
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

| | | | |
|---|---|---|---|
| ☐ 1 | U.S. Government Plaintiff | ☒ 3 | Federal Question *(U.S. Government Not a Party)* |
| ☐ 2 | U.S. Government Defendant | ☐ 4 | Diversity *(Indicate Citizenship of Parties in Item III)* |

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** / **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane / ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability / ☐ 367 Health Care/ | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander / Pharmaceutical Personal Injury | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability / Product Liability | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine / ☐ 368 Asbestos Personal | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability / Injury Product Liability | | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle / **PERSONAL PROPERTY** ☐ 370 Other Fraud | **LABOR** | ☐ 840 Trademark ☐ 880 Defend Trade Secrets Act of 2016 | ☐ 470 Racketeer Influenced and Corrupt Organizations ☐ 480 Consumer Credit (15 USC 1681 or 1692) |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability / ☐ 371 Truth in Lending | ☐ 710 Fair Labor Standards Act | | ☐ 485 Telephone Consumer Protection Act |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury / ☐ 380 Other Personal Property Damage | ☐ 720 Labor/Management Relations | **SOCIAL SECURITY** | ☐ 490 Cable/Sat TV |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice / ☐ 385 Property Damage Product Liability | ☐ 740 Railway Labor Act | ☐ 861 HIA (1395ff) ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 196 Franchise | | ☐ 751 Family and Medical Leave Act | ☐ 863 DIWC/DIWW (405(g)) ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** / **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation ☐ 791 Employee Retirement Income Security Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights / **Habeas Corpus:** | | **FEDERAL TAX SUITS** | ☐ 895 Freedom of Information Act |
| ☐ 220 Foreclosure | ☐ 441 Voting / ☐ 463 Alien Detainee | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment / ☐ 510 Motions to Vacate Sentence | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 896 Arbitration |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations / ☒ 530 General | | | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment / ☐ 535 Death Penalty | **IMMIGRATION** | | ☐ 950 Constitutionality of State Statutes |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other / **Other:** ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application ☐ 465 Other Immigration Actions | | |
| | ☐ 448 Education / ☐ 550 Civil Rights | | | |
| | ☐ 555 Prison Condition | | | |
| | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

| | | | | | | |
|---|---|---|---|---|---|---|
| ☒ 1 Original Proceeding | ☐ 2 Removed from State Court | ☐ 3 Remanded from Appellate Court | ☐ 4 Reinstated or Reopened | ☐ 5 Transferred from Another District *(specify)* | ☐ 6 Multidistrict Litigation - Transfer | ☐ 8 Multidistrict Litigation - Direct File |

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
28 USC 2254 Petition for Writ of Habeas Corpus

Brief description of cause:

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

DEMAND $ _____

CHECK YES only if demanded in complaint:
**JURY DEMAND:** ☐ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*  JUDGE _____  DOCKET NUMBER _____

DATE _____  SIGNATURE OF ATTORNEY OF RECORD _____

**FOR OFFICE USE ONLY**

RECEIPT # _____  AMOUNT _____  APPLYING IFP _____  JUDGE _____  MAG. JUDGE _____